DE WITT v. MONJO.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

**1. NOVATION—EVIDENCE.**
Defendant ordered goods from a manufacturer, but before their delivery he sold his business, and they were delivered to his vendee, who agreed to pay for them. The manufacturer was advised of the sale and the existence of the agreement, and when the bill for the goods fell due received a note for the amount, executed by such vendee. From the time the note was received until there was a final failure to pay a balance due on a draft which had been substituted for the note, the manufacturer dealt with defendant's vendee as though it were primarily liable for the goods, and without reference to defendant. *Held*, that these facts were sufficient to establish a contract of novation by which the defendant was discharged.

**2. REFERENCE—HEARING—REOPENING CASE.**
The exercise of the discretionary power of a referee to open a case, after the evidence is closed, to permit a party to give material evidence to establish his defense, will not be reversed unless abused.

O'Brien, J., dissenting.

Appeal from judgment on report of referee.

Action by William R. De Witt against Louis Monjo. From a judgment dismissing the complaint, entered on a referee's report, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Albridge C. Smith, for appellant.
Thomas M. Rowlette, for respondent.

RUMSEY, J. The action was brought to recover the balance due upon a sale of goods by the Midland Steel Company, of which the plaintiff was assignee, to the defendant. From the judgment entered upon the report of the referee dismissing the complaint this appeal is taken.

It appears that in the early part of the year 1896 the defendant, who was doing business under the name of Louis Monjo, Jr., & Co., ordered from the Midland Steel Company a car load of steel at the price of $759.32, upon a credit of 60 days. There was considerable delay in the shipment of the goods, and they were not finally received until about the 15th of May, 1896. Before that time the defendant had sold to the National Wrought-Steel Manufacturing Company, and that company had taken possession of, all his property and business, and when this car load of steel reached the place to which it was consigned it was delivered to the National Wrought-Steel Manufacturing Company. On the 29th of July that company delivered to the Midland Steel Company, the seller of the goods, its promissory note for the amount due upon the car load of steel. The note was not paid when due, but was renewed. When the renewed note became due, that was not paid, but after some negotiations the Midland Steel Company drew its draft for the amount of the note, with interest, upon the Wrought-Steel Company, which was accepted by it, and a payment of $425 was made

by the acceptor upon the draft. The remainder was not paid, and it is to recover that remainder that this action is brought.

The foregoing facts are not disputed. It is conceded that the claim of the Midland Steel Company was assigned to the plaintiff before the bringing of this action. It is claimed by the defendant that upon his sale to the Wrought-Steel Company of his property and business that company agreed to pay for this car load of steel when it was received; that the Midland Steel Company was advised of the purchase by the National Wrought-Steel Manufacturing Company of the defendant's plant and business, and of the general relations between the Wrought-Steel Company and the defendant; and that, knowing these relations, it accepted the Wrought-Steel Company as its debtor under such circumstances as to warrant the conclusion that it consented to the agreement between that company and the defendant, by which the Wrought-Steel Company agreed to pay for this car load of steel; and that by reason of its assent to that agreement a novation took place, as a result of which the defendant was discharged and the Wrought-Steel Company became the debtor of the Midland Company. There was evidence which warranted the finding that the Wrought-Steel Company had agreed with Monjo to pay the bill for this car load of steel, and there was also evidence that this agreement was known to the Midland Steel Company, although there is no direct evidence that the precise terms of the agreement were made known to it. It is undisputed, however, that the Midland Steel Company was advised of this agreement between Monjo and the Wrought-Steel Company, and the facts shown raise an inference that it accepted the situation, and, when the bill for the steel became due, received the note of the Wrought-Steel Company in place of the obligation of Monjo. It is clear, too, that from the time that note was received until there was a final failure of the Wrought-Steel Company to pay the balance due upon the draft which had been substituted for the note the Midland Steel Company dealt with the Wrought-Steel Company precisely as though it were liable primarily for the steel, and without reference to Monjo.

From these facts it is fair to infer, as seems to have been inferred by the referee, that the Midland Steel Company assented to the agreement by which the Wrought-Steel Company assumed to pay for this car load of steel, and accepted that company as its debtor in the place of Monjo, to whom the steel was originally sold. These facts are all that are necessary to establish a novation. To prove the assent of the creditor it is not necessary that express knowledge of the transaction be brought home to him, but that assent may be proved by circumstantial evidence, precisely as other facts may be similarly proved. 16 Am. & Eng. Enc. Law, 880, 881, 889; Hotchin v. Secor, 8 Mich. 494; and Regester v. Dodge, 61 How. Prac. 107, 114. There was sufficient evidence, therefore, to warrant the conclusion reached by the referee. It is quite true that these facts were not found by him in his report, but, as the evidence would have warranted the finding of them, the court will infer their existence, although not found in the report, to sustain

the judgment. Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209, 213, 31 N. E. 1018.

It is claimed by the plaintiff that the referee erred in opening the case, after the evidence was closed, to permit the defendant to give material evidence bearing upon this question of novation. Whether it was proper or not to open the case was a matter within the discretion of the referee, and that discretion will not be reversed, unless, from the facts, it is made to appear that the discretion has been abused. We cannot infer any abuse from what is shown in this case. The plaintiff made no application for an adjournment, after the new evidence was received, to enable him to meet the facts which then appeared. It is to be assumed, therefore, that he did not deem it necessary to make such proof, and he cannot now say that he had no opportunity to do so. The evidence admitted was clearly competent and relevant, and it was equally within the discretion of the referee to receive it if he saw fit.

We can find no error in the judgment, and for that reason it is affirmed, with costs to the respondent. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. (dissenting). As the conclusion reached is based upon inferences from the testimony, I deem it important, even at the risk of being tedious, to refer to the same in detail. On the trial before the referee, Ross J. Beatty, president of the Midland Steel Company, testified that he received the order for the car load of steel from the defendant about March 18, 1896, and it was filled and shipped to the defendant May 15, 1896, and that after the shipment a statement was made out and sent to the defendant each month. There are papers in evidence relating to the order, from which it appears that the defendant had written, "On arrival of the steel at the factory we will send check," and that 60 days' credit was given. And there is a letter from the defendant, dated July 20, 1896, asking an extension of time for payment. (The car load of steel had then arrived at its destination, and been delivered, and the 60-days credit had expired.) William Palmer, president of the National Wrought-Steel Company, testified that in June, 1896, there was a car load of steel on the tracks, consigned to the defendant, and that the defendant told the company to put it in the factory, which was how they got possession of it; that a promissory note for $763.15, dated August 29, 1896, was sent by the National Wrought-Steel Company to the plaintiff's assignor,—that being the amount of money due on the car load of steel; that when the note became due a time draft was given for the same sum plus interest, and, after the time draft became overdue, $425 was paid thereon; that the National Wrought-Steel Company is now insolvent. The defendant testified that he had previous dealings with the Midland Steel Company, and ordered the car load of steel, saying it was to be sent to him; that he sold his business to the National Wrought-Steel Company, but does not remember notifying the Midland Company of that fact; that "after the sale took place, and after the purchase and before the delivery," he believed he notified them; that

he had no written agreement with the National Company for pay-ment of the indebtedness; that no demand on him for payment was made after July 29, 1896, till January 26, 1898. The defendant was alone originally liable for the cargo of steel, and the question for consideration is whether the learned referee was right in holding that the Midland Company by implication assented to the discharge of the defendant, and accepted, with the defendant's consent, the National Wrought-Steel Manufacturing Company as a debtor in his place and stead. It will be seen that the referee does not find that there was any express agreement, but only one arising by implica-tion from the fact of the acceptance of the notes of the Wrought-Steel Company, and the payment of part of the claim by that com-pany, and the evidence contained in the letters showing the trans-actions between the Midland Company and the Wrought-Steel Com-pany. All that can be gathered from these letters and from the oral evidence is that after demand upon the defendant, and a re-quest by him for an extension of time subsequent to the delivery of the steel, the National Wrought-Steel Manufacturing Company sent a note for the amount, which note was received, and was subse-quently renewed. The defendant testified that he thought he sent a notice of the sale of his business to the Wrought-Steel Company, but he does not claim that he notified the Midland Company that his successor in business had assumed his obligations by agreeing to pay his debts, including that to the Midland Company; and, apart from the fact that the note was received, and subsequently renewed, as stated, there is nothing to show that the note was accepted in payment of the defendant's debt. On the contrary, the testimony of the president of the Midland Company shows that after the de-livery of the goods monthly statements were sent to the defendant, although the defendant says he received no demand for payment after July 29, 1896; and not only is there absence of proof that the Wrought-Steel Company assumed the obligations of the defendant, but, even if there was, there is nothing to show that this fact was communicated to the Midland Company. We think that the fail-ure to bring home to the Midland Company notice of the fact (if it existed) that there was an agreement to assume and pay the ob-ligations of the defendant, or a definite agreement on the part of the Midland Company to accept the note of the Wrought-Steel Com-pany in payment, at or before the time when it received such note, militates against the conclusion reached by the referee that the mere receipt of the note under the circumstances disclosed here acted as a discharge of the defendant's liability. There was no agreement proven as to the assumption by the Wrought-Steel Com-pany of the defendant's debts at the time the latter turned over his business; but, whether there was or not, under the defendant's tes-timony such agreement would not be conclusive, for the reason that he testifies that, apart from the consideration for the transferring of the business, there was a separate and distinct agreement be-tween him and the Wrought-Steel Company in regard to this par-ticular car load of steel, by which he turned it over on the promise of the Wrought-Steel Company to pay therefor.

The difference between my view and that taken by Mr. Justice RUMSEY grows out of what different presumptions will be indulged in on the receipt by a creditor of the note of a third party in the absence of any express or definite agreement between the parties. I understand his view, based on the two cases of Hotchin v. Secor, 8 Mich. 494, and Regester v. Dodge, 61 How. Prac. 107, to be that upon such slight evidence as here appears an agreement will be inferred or implied that the note was taken in payment; whereas I think in such cases the least presumption is that the note was received conditionally, or as collateral, and not in payment, and the burden of showing such an agreement as to payment is on the debtor, and it must be proved, if not by a direct, at least by clear and satisfactory, evidence. Neither of the cases referred to were New York cases; one being a decision of the courts of Michigan, and the other a case in partnership in the United States circuit court. In partnership cases it has been held in this state that where one partner retires, although the creditor has notice thereof, this does not discharge the retiring partner unless he has notice in addition of an express agreement on the part of the continuing partners to assume and pay the liabilities of the old firm; and neither the acceptance of a note nor the obtaining of a judgment against the new firm will discharge the retiring partner in the absence of such an agreement. Palmer v. Purdy, 83 N. Y. 144; Bank v. Underwood, 2 App. Div. 342, 37 N. Y. Supp. 838; McLoughlin v. Bieber, 41 App. Div. 561, 58 N. Y. Supp. 790. Although the question here is not quite the same as in partnership cases, I think the principle and reasoning involved are analogous, and that on the mere receipt of a note of a third party after a debt is due it will not be presumed to have been received in payment. If, with knowledge of a definite agreement that a third party is to pay the debt, it is received, then there would be a novation. So, also, if simultaneously with the contracting of the debt the note of a third party were given, there would again be a novation. As stated generally in 16 Am. & Eng. Enc. Law, 890:

"When a creditor accepts the note of a third person in payment of his debt, a novation takes place. * * * The mere acceptance of such a note, however, does not constitute a novation without some evidence that it was taken in satisfaction of the debt."

In the footnote cases are cited that there is no presumption that the note is taken in payment.

Apart from my view that in the absence of definite proof that there was such an agreement there arises a presumption that the note of a third person was received as collateral, rather than in payment, there is another consideration, which, upon the facts here, seems to me controlling. The car load of steel had been received by the defendant, and turned over by him to the National Wrought-Steel Company. Thereafter the term of credit, which was 60 days, expired, and the debt was due and payable, when the defendant asked for an extension of time, and it was subsequent to that event that the note of the National Wrought-Steel Company was sent and received. In Gibson v. Toby, 53 Barb. 191, earlier cases are summarized, and the court says:

"When the sale and delivery of the property and the transfer of the note are at the same time, a presumption arises that the parties agreed to an exchange of property,—that is, that the vendor should sell and deliver his property for the note to be transferred by the other party, called the 'vendee,'—and, the agreement being executed, the note is taken at the risk of the party taking it for his property. The fact of a simultaneous exchange is the evidence from which the agreement is presumed."

Among other cases the court refers to that of Ward v. Evans, 2 Ld. Raym. 928, where Lord Holt said that:

"Taking a note for goods sold is a payment, because it was a part of the original contract. But paper is no payment when there is a precedent debt, for when such a note is given in payment it is always intended to be taken under the condition to be payment if the money be paid thereon in convenient time."

Reference was also made to the long-established authority of Noel v. Murray, 13 N. Y. 167, that the acceptance by a creditor from his debtor of a bill or note made by a third person on account of the debt does not satisfy it unless the parties agreed that it should be received as payment, and the presumption is that it was not taken as payment, and the onus of establishing that it was agreed to be so taken is upon the debtor.

All the authorities in this state hold that in the case of a precedent debt the note of a third person is not to be deemed to be taken in payment unless there is positive proof to that effect. See Whitaker v. Whitaker, 4 Hun, 810; Raynor v. Laux, 28 Hun, 35; Smith v. Applegate, 1 Daly, 91; Darnall v. Morehouse, 36 How. Prac. 511. In the last-mentioned case, as well stated in the headnote:

"The extinguishment of one cause of action by the substitution of another of the same degree can only be by way of accord and satisfaction, which cannot be implied by law, but is the effect of agreement between the parties. The check or note of a third person is not a satisfaction of the engagement unless it be so agreed."

The law outlined has been followed and more clearly formulated in the recent cases. Thus in the case of Kirkham v. Bank, 26 App. Div. 110, 49 N. Y. Supp. 767. Justice Ingraham, in writing the opinion of the court, says:

"The question as to the effect of a receipt by a creditor of a check or draft of a debtor in payment of a debt has been much discussed, but it seems to be now settled that the receipt of such a check or draft is not a payment of the debt unless there is an express agreement to that effect, the burden being upon the debtor to prove that agreement."

And in Hall v. Stevens, 116 N. Y. 209, 22 N. E. 374, it is said:

"The answer * * * depends upon whether the draft was taken for a present or a precedent debt. If it was for the former, the presumption is that it was agreed to be taken in payment, and the burden of proving the contrary rested upon the plaintiff; while if it was for the latter, the presumption is that it was not taken as payment, and the onus of establishing that it was so taken rested upon the defendant."

In the case at bar the note of the National Wrought-Steel Company was not given at the time when the debt for the car load of steel accrued, but was subsequently sent to the Midland Steel Company, and, as there is no clear or positive evidence of any agreement that the note should be received in payment, I must, for the

reasons stated, dissent from the opinion of the majority of the court. I think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.