J. A. DALTON, Appellant, v. THEODORE TREINEN, Appellee.

**CONTRACTS:** Construction—Mutual Construction. On the issue
1 whether an agent had authority to execute, *in the name of his principal,* a contract of sale of his principal's land, the fact is very
persuasive that the agent, before assuming to execute the contract
in the name of the principal, repeatedly attempted, without success,
to induce the principal himself to sign the contract.

**EVIDENCE:** Parol as Affecting Writings—Oral Reservation of Rent.
2 Evidence of an oral agreement between an owner of land and his
sale agents, contemporaneous with a written contract of agency for
the sale of the land, to the effect that the owner, in case of a sale,
should have the future-accruing rent under an existing lease, is
competent, the written contract being silent as to such reservation.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON,
Judge.

FEBRUARY 16, 1921.

PETITION FOR REHEARING DISMISSED BY ·APPELLANT
SEPTEMBER 19, 1921.

ACTION seeking to bind defendant to specific performance
of a contract made by his agents for the sale of his land to
plaintiff. Relief denied. Plaintiff appeals. Facts appear in
opinion.—*Affirmed.*

*Molyneux & Maher, John Laughlin,* and *C. D. Meloy,* for
appellant.

*McDuffie & Keenan* and *J. A. Miller,* for appellee.

ARTHUR, J.—For many years, Theodore Treinen, defendant, has been the owner of the southwest quarter and the south
half of the northwest quarter of Section 23, Meadow Township,

**1. CONTRACTS:** Plymouth County, Iowa. On November 21, **construction: mutual con-** 1918, defendant was about to go to California, **struction.** to spend the winter, and did go, December 1, 1918, and listed the land for sale with Crangle & Herbert, real estate dealers in Marcus, Iowa,—that is, defendant claims it was listed for sale, but plaintiff claims that it was a contract authorizing the plaintiff to make absolute sale of the land. The instrument is in writing, and is hereinafter set out.

On February 8, 1919, plaintiff and the agents, Crangle & Herbert, met in the office of Crangle & Herbert. Plaintiff was looking for land, and came to Marcus with the intention of buying a farm, he says. The agents told him about the Treinen land, and told him it was a good buy, and Crangle and plaintiff went out and looked at the land. Plaintiff then offered to purchase the premises, through Crangle & Herbert as agents, at the price and on the terms quoted to him,—of $66,000, as he claims, —and delivered to Crangle & Herbert his check for $2,500. Plaintiff claims that Crangle & Herbert told him, then and there, that they would sell him the land. At the time, a contract was prepared, and sent to defendant. Defendant refused to sign the contract, and returned both the contract and the check to Crangle & Herbert, in a letter of date of February 15, 1919, in which he stated his objection to the contract.

On March 6, 1919, Crangle & Herbert mailed to defendant, at Pasadena, California, another contract, being the same in all respects as the first contract, which he had refused to sign, except that it was made subject to a lease for the year 1920. Under date of March 10, 1919, in a letter, defendant promptly returned to Crangle & Herbert this second contract, together with the same check that had accompanied the first contract. Upon defendant's second refusal to sign a contract conveying the land to plaintiff, the agents of defendant, Crangle & Herbert, assumed authority so to do, and made and entered into a contract, for and in behalf of defendant, for the sale of the land to plaintiff.

The major question for determination in this cause, and the question upon which the case turns, is the authority of Crangle & Herbert, as agents of defendant, to bind the defendant by a contract which they, as agents, made with plaintiff for

the sale of the land: that is, whether, by the contract entered into, the defendant is bound to specific performance of such contract. This question must be answered from the evidence and the law applicable. The contract between defendant and Crangle & Herbert is as follows:

"I hereby grant Crangle & Herbert of Marcus, Iowa, the exclusive right of purchase and authority to advertise and sell the following described real estate, to wit: SW¼ Sec. 23 and S½ of NW¼ Sec. 23, Meadow Township, located in Plymouth County and state of Iowa for an agreed consideration of $66,000, on terms as follows: $1,500 on date sale is made and $6,500 on or before March 1, 1919; $2,500 down if sale is made after March 1, 1919, balance to remain on the above real estate for a term of 10 years with interest at 5 per cent payable annually. I agree to convey said real estate by warranty deed and furnish at my expense a merchantable abstract of title brought down to date of settlement. I agree to pay $2.50 per acre commission when sale is made, when contract is signed.

"House: 7-room house; cattle barn, 40x56x20 high; barn, 24x32x16 high; cattle, 24x64; crib, 28x50x24; hog house, 21x40, tile; hen house, 16x22; tool house, 20x50.

"How rented. $10 pasture and meadow; share 2-5; distance to school, one and one-half miles. Phone. Yes. Insurance, Yes.

"This contract to be in effect until April 1, 1919."

The contract of sale made by Crangle & Herbert with plaintiff was, in its terms, in accord with the listing agreement, except that the listing agreement did not mention the time when purchaser should take possession, nor the leasehold; and the contract of sale made by Crangle & Herbert provided that Treinen should deed the land subject to a lease which expired March 1, 1921, and would give possession March 1, 1920, and for liquidated damages on failure to perform.

To ascertain whether Crangle & Herbert had authority to bind the defendant in the contract which they made with plaintiff for the sale of the land, we must examine the evidence offered in connection with the written instruments.

The first contract prepared by Crangle & Herbert, about February 8, 1919, was sent by them to defendant, and he re-

turned it to them unsigned, together with Dalton's check for $2,500 down payment, in a letter as follows:

"Pasadena, Cal.
"Feb. 15, 1919.
"Crangle & Herbert,
     "Dear Sirs:
     "Rec'd contract of sale and also check for $2,500, but am sorry to say it is not according to contract I signed with you. According to same would be as follows $2,500 on date of sale, $5,500 March 1, 1919, mortgage dated same, possession March 1, 1921, and $58,000 payable March 1, 1929.
               "Inclosed find contents to be corrected as per contract.
                         "[Signed]   Theo. Treinen."

When Crangle & Herbert forwarded to defendant the second contract, on March 6th, they wrote him:

"We are inclosing new contracts of the sale of your farm to Mr. Jas. Dalton, in accordance, with our contract with you, which you may sign and return the duplicate to us. Mr. Dalton will buy it subject to lease for 1921. We are also inclosing his check for $2,500 the first payment."

Answering, on March 10th, defendant wrote Crangle & Herbert:

"Received contents today and all is satisfactory excepting as to who is to get the rent for 1920. According to agreements with you I am to get the rent till expiration of lease, and would like to have it put in the contract that I am to get said rent, according to sale contract it is supposed to be deeded subject to lease, but I want it described in contract as per above agreement."

On March 14th, Crangle & Herbert replied to defendant, writing:

"Contracts just received, and note what you say relative to lease. Mr. Dalton makes settlement March 1, 1920. Which

will give him the rent for that year. We trust that you are not so unreasonable as to expect him to settle March 1, 1920, and allow you the rent. Furthermore our own contract with you don't say anything about the lease or the length of time it is leased for. And you didn't tell us when you listed it, that it was rented for two years. We first learned that it was rented for 1920 from your tenant. Now Ted, we feel that we have fulfilled our part of the contract, and are returning contracts to you, for your signature, which we expect you to sign, as we have delivered you a buyer, and have earned our commission of $600.00 for which kindly send us your check.''

On March 29, 1919, in answer to letter of Crangle & Herbert of March 14th, defendant wrote:

''I just got back from Frisco last night, which is the cause of the delay of me returning contents for the same reasons as related to you before. In regard to your pussy-footing in the accompanying letter, I will let your own conscience answer and don't forget the first objection remark made by James Crangle (That it will be hard to sell a place with that long a lease on it). I am sorry I can't see things in the same light as you do in regard to the requested check of $600.00. It takes business to the letter of agreements and contracts to make me see it.''

Plaintiff Dalton testified, in substance:
''About February 8th, I went to the office of Crangle & Herbert and talked about buying a farm. Crangle was there. Crangle said, 'Do you want to buy a farm?' and, 'The Treinen farm is for sale.' Crangle and I went out and looked at the farm. At that time, 'I bought it under conditions of the contract.' I signed a contract in their office that day. They did not sign the contract, but they sent it on for Treinen's approval. After that, Crangle & Herbert told me that they had a letter from Mr. Treinen, stating that he would not accept the contract; that the place was rented for two years. They told me the place could be bought subject to a lease, and I was buying it that way; but I knew that Treinen did not approve, because Crangle & Herbert said that Treinen said that he could not sell the farm,

because it was rented for two years. But Crangle & Herbert did not tell me that Treinen was claiming the rental up to the date of the expiration of the lease. Crangle & Herbert told me that I was buying the land subject to the lease. On March 3d, Crangle & Herbert called me up by phone, and said that the Treinen 240 acres could be bought for $275 an acre, with $2,500 down, and $5,500 the last of March, 1920, and $58,000 on ten years' time, at 5 per cent, and the place would have to be bought subject to a lease. I told them I would take it. Crangle & Herbert had my check for $2,500 in their possession since about February 8th, and I told them to use that for the down payment. They sent a contract [the one above set out] in a letter, with instructions to sign and return it. Crangle & Herbert had not signed the contract at that time. I knew that the contract would have to be sent to Treinen for his approval, just the same as the other one. Afterwards, Crangle & Herbert showed me Treinen's letter to them of March 10, 1919, wherein Treinen said: 'All is satisfactory excepting as to who is to get the rent for 1920. * * * I am to get the rent till expiration of lease.' I knew that the contract would be sent to Treinen for his approval and signature, by my talk with Crangle & Herbert. They told me they were going to send it on for Treinen's signature. This was at the first deal in February, and I knew that they sent the contract to Treinen. I also knew that the second contract would be sent to Treinen for his approval and signature."

Dalton was recalled to correct his former testimony, and said that Crangle & Herbert did not inform him until March 4th that Treinen wanted to reserve for himself the rent for the year 1920; that he knew nothing about Mr. Treinen's desire to reserve to himself the rent for the year 1920, until he was shown Treinen's letter of March 10th.

Thomas E. Herbert testified:

"I said nothing to Dalton about Treinen's demanding the rent for the year 1920 or 1921, prior to the time we received Treinen's letter of March 10th. When Dalton signed the second contract, on March 3d, we had not told Dalton that Treinen was demanding the rent for the year 1920. We did not know it until we received Treinen's letter of March 10th. At the time I sent the second contract to Treinen, I sent it for his signa-

ture. After the contract came back with Treinen's disapproval, we signed it. It was my idea that we could bind Treinen, whether he approved our action in selling the land to Dalton or not. We sent the contract to be approved by Mr. Treinen, but it was not necessary."

James Crangle testified:

"Up to March 4, 1919, I had not told Dalton that any contract we entered into with him had to be approved by Mr. Treinen. Up to that time, I had not told Dalton that Treinen wanted to reserve the rent for 1920. I did not know anything about it until we got his return letter of March 10th. After Treinen wrote that the contract was not satisfactory, and I knew that, we went ahead and tried to bind him on a contract made by us."

Theodore Treinen testified:

"At the time I listed my land with Crangle & Herbert, I told them I would not give possession until March 1, 1921; that I had a conditional lease with my tenant that we would modify the rental according to the prices at the time he would sell his grain. The tenant thought the cash rental was too high. I had a conversation with Tom Herbert and James Crangle in their office, when I got home from California in April, and they talked to me about why I did not tell them about my desire to reserve the rent. We talked back and forth, and I did not tell them that I didn't think about it at the time I listed the property with them. I did not say that I had never talked with them about it. I had told them."

Herbert, in rebuttal, testified:

"In a conversation in our office where Mr. Crangle was present, I said to Treinen, 'Wouldn't it have been best policy for you to have that reservation of rent inserted into the listing contract?' Treinen said, 'You would be just as much to blame for it as I would,' and I said it didn't make any difference if we got a purchaser who would buy it subject to the lease; it was all right with us; so it didn't make any difference about it. Treinen did not say, 'I never thought about it.' He said, 'It was you fellows was as much to blame as I was for not putting it in.'"

Crangle testified the same as Herbert on rebuttal.

Plaintiff and defendant had no direct dealing. The transactions were between defendant and his agents, Crangle & Herbert, and between Crangle & Herbert, agents, and plaintiff. Defendant refused to approve and sign the first contract prepared by Crangle & Herbert and sent to him, because it did not reserve to him possession and the rent of the premises until March 1, 1921. The second contract sent to defendant by his agents contained a clause that defendant was to "give possession by March 1, 1920, subject to lease." Defendant refused to sign this contract, because it did not provide, as he puts it, that "I am to get the rent till expiration of lease."

After Treinen had refused for the second time to approve and sign the contracts sent to him, stating his reasons therefor in his letters, Crangle & Herbert again wrote to him, on March 14th, again sending him a contract, stating:

"We feel that we have fulfilled our part of the contract, and are returning contracts to you for your signature, which we expect you to sign, as we have delivered you a buyer, and have earned our commission of $600, for which kindly send us a check."

Further, they wrote:

"Our own contract with you don't say anything about the lease or the length of time it is leased for, and you didn't tell us when you listed it that it was rented for two years."

Treinen did not sign the contract sent to him for the third time. On March 29th, after he had returned to Iowa, he wrote to Crangle & Herbert, and said, among other things:

"I am sorry I cannot see things in the same light you do in regard to the requested check of $600. It takes business to the letter of agreements and contract to make me see it."

In the letter, Treinen returned the contract.

Perhaps it would be well, before endeavoring to ascertain the real intentions and purposes of Mr. Treinen, as principal, and Crangle & Herbert, as agents, to seek to ascertain from the whole record, the effect and weight to be given, if any, to the oral testimony relating to the claimed oral agreement, concurrent with the written agreement between defendant and his agents, with reference to the leasehold and reservation in Treinen

2. EVIDENCE: parol as affecting writings: oral reservation of rent.

of the rents up to March 1, 1921. First, is such evidence competent, and can it be considered?

The evidence is rather indefinite and difficult to understand; but such as it is, we think it is competent, as tending to establish an independent verbal agreement between defendant and his agents, contemporaneous with the written contract, relative to the leasehold and reservation of rents. Such agreement in parol is not inconsistent with the written agreement, and does not impair or vary the writing. *Wells v. Hocking Valley Coal Co.*, 137 Iowa 526, 536; *Witthauer v. Wheeler,* 172 Iowa 225. Anyway, plaintiff was not in a position to urge objection to the parol evidence, because he was not a party to the agreement. Crangle & Herbert claim, as witnesses, and in their letters, that, at the time defendant listed the land with them, nothing whatever was said about the lease on the land for two years—about the land's being rented up to March 1, 1921; that nothing was said about Treinen's reserving the rent for the year 1920; that they first learned that it was rented for the year 1920 from the tenant on the place. Treinen's claim is that, at the time he listed the land with Crangle & Herbert, he told them he would not give possession until March, 1921, and gave as his reason that he had a conditional lease with his tenant that he would modify the rental according to the prices at the time the tenant would sell his grain. The subsequent acts of Crangle & Herbert in sending the contract to Treinen for him to execute, and in again going through the same proceeding, and in sending him a contract for the third time, even after the contract in suit appears to be dated, would seem to bear out Treinen's position that he had, at the time of listing the property with Crangle & Herbert, instructed them as he claims, concerning possession and rental of the premises. Dalton had no direct dealing with Treinen. Dalton, in dealing with Crangle & Herbert, agents, was bound to take notice of the extent of their authority; and, if the contention of Treinen is sustained by the evidence—and we think it is—that he had given oral instructions to Crangle & Herbert, at the time of the listing, that, in a sale made, the 1920 rental of the land was to be reserved to him, Dalton would be bound to take notice of the extent of the authority of Crangle & Herbert to bind their principal with refer-

ence to the rent matter. *Woods v. Wilson,* 177 Iowa 361; *Dodd v. Groos,* 175 Iowa 47.

It is elementary that the best evidence as to how the parties to an agreement understand its terms is afforded by their acts under it. *Thompson v. Locke,* 65 Iowa 429; *Pratt v. Prouty,* 104 Iowa 419. Although Crangle & Herbert say, "We sent the contract to be approved by Mr. Treinen, but it was not necessary," their acts would seem to convince that they did think it was necessary to have Treinen sign the contract. Up to the time that their efforts to secure his approval and signing of the contract had proved unavailing, they evidently proceeded on that understanding. Whether they earlier had it in mind that they could bind Treinen with a contract executed by them, they did not attempt to do so until after they had sent the contracts to Treinen in California three times, their attempts covering a period of from February 8th up until after March 14th, and perhaps until after they had received his letter of March 29th. The contract bears date of March 4th, but it was not signed by Crangle & Herbert at that time. The record does not disclose exactly when Crangle & Herbert signed it. The acts and writings of Crangle & Herbert seem to us to show that they were presenting to Treinen, subject to his approval, a buyer for his land, and that they were to receive a commission for such service. On sending a contract to Treinen for the third time, in their letter of March 14th, they seem to have been acting, up to that time, on the theory that it was necessary to have Treinen's approval and his signature to the contracts. They say:

"We expect you to sign, as we have delivered you a buyer, and have earned our commission of $600, for which kindly send us your check."

It is true that their demands for a commission would be consistent with either making completed sale or finding a buyer. If Crangle & Herbert all the time considered that they were given absolute authority to make a sale without the approval of Treinen, they were quite tardy, to say the least, in attempting to exercise such power. They did not attempt to exercise the authority which they claimed was given them by Treinen to make absolute sale of the property without approval by Treinen

until after they had endeavored for quite a length of time to persuade Treinen to sign the contract himself.

Dalton's testimony throws some light on how Crangle & Herbert construed their authority. All Dalton knew of their agency and authority as agents he learned from them, and Dalton says, "I knew the contract would have to be sent to Treinen for his approval." Dalton seems not to have been misled to think that he could purchase the land until he complied with terms finally approved by Treinen.

Considering all the evidence, the correspondence between Crangle & Herbert and Treinen, and the competent oral evidence, we are of the opinion that the trial court's decision was correct. The evidence does not warrant a decree for a specific performance or alternative relief.

The judgment below is—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.