HUGO REIMERS, Appellee, v. E. A. TONNE et al., Appellees; E. H. HOYT, Receiver, et al., Appellants.

1012

October 23, 1928.

Rehearing Denied March 8, 1929.

*Thomas & Myers* and *Parrish, Cohen, Guthrie & Watters,* for appellants.

· *A. B. Carlson* and *E. E. Wagner*, for plaintiff and interveners.

*J. M. Parsons* and *Clark, Dwinell & Meltzer*, for appellees.

FAVILLE, J.—I. On the 9th of May, 1921, the defendants Tonne, Storjahann, N. Hampe, H. T. Hampe, and Fisher executed and delivered to plaintiff and the interveners their certain promissory notes. On or about the 2d day of February, 1924, the two Hampes and Storjahann, for the purpose of securing said indebtedness due to the plaintiff and the interveners, assigned certain certificates of stock in the Hawkeye Casualty Company to the plaintiff, as collateral security. The said shares of stock appeared upon the books of the said Hawkeye Casualty Company in the name of said parties. Sometime prior to June 12, 1924, E. H. Hoyt was appointed receiver of the Inter-State Automobile Insurance Company, and obtained a judgment in the district court of Lyon County, Iowa, against the said two Hampes, Storjahann, and other persons, for an amount aggregating more than $400,000. On this judgment, an execution was duly issued to Polk County, Iowa, under and by virtue of which Findley, as sheriff of said county, on June 12, 1924, levied upon the said shares of stock in the Hawkeye Casualty Company, the certificates representing which had been issued to the two Hampes and Storjahann, and which it is claimed were, at the time, held by the plaintiff under an assignment from said parties, as collateral security for the indebtedness of said defendants and others to the plaintiff and the interveners in this action. A separate defense is interposed by the defendant Fisher, which we will consider later.

The sole question at this point is whether the assignment of said certificates of stock to the plaintiff is good and valid, as against the levy of the execution on said shares of stock. At the time that the levy was made, the shares of stock appeared on the books of the corporation in the name of the said defendants and judgment debtors. The record shows that there was no notation upon the books of the corporation showing that said shares of stock had been assigned or transferred to the plaintiff, or that the same were held as collateral security or otherwise by anyone. On February 2, 1924, one Hampe, who, it appears,

was cashier of the Iowa Savings Bank, wrote a letter to Storjahann, who, at the time, was secretary of the said Hawkeye Casualty Company, in which he said:

"After I wrote you yesterday Hugo Reimers came in and left the following certificates:

"No. 296-N. Hampe.....................100 shares
"No. 297-N. Hampe ...................103-2/10 shares
"No. 298-H. T. Hampe.................196-6/10 shares
"No. 299-H. F. Storjahann ............192-6/10 shares.

"In lieu of the above numbered certificates, I handed him the ones which were sent to me by you recently, for a like number of shares, issued in the Hawkeye Casualty Company.

"Hugo made some mention again of the fact that there was some discrepancy in the number of shares they now had and I told him I realized there was, but did not say much more so we will just let the matter drift along as it now stands.

"I hope this now closes all of the old Inter-State Liability stock outstanding, with the exception possibly of John Boquet's and that of Henry Sindt. If, when you receive this letter, you have not received the above certificates, kindly advise me and I will take it up with these parties and I may be able to get them to deliver their old certificates so that you can issue the new in place thereof."

There is some evidence tending to show that this letter was written at the instance of the plaintiff, Reimers; and, if this be conceded to be true, for the sake of the argument, the question then arises as to whether or not said letter was such a giving of notice in writing to the secretary of the corporation issuing such stock as is required by the statute (Code of 1897, Section 1626). We do not think that this letter, assuming it to have been written for and in behalf of the plaintiff, was sufficient compliance with the terms of the statute to constitute the notice required thereby of the assignment of said shares of stock to the plaintiff, as pledgee. We have had occasion to consider said statute and a somewhat similar situation in the case of *Maloney v. Storjahann*, 206 Iowa 721. It is unnecessary that we repeat the discussion therein contained, or again cite the authorities. Following the rule therein announced, we hold that there was no legal written notice of the assignment to plaintiff.

II. At the time that the stock was transferred to the plaintiff, Storjahann was secretary of the said Hawkeye Casualty Company, and had personal knowledge of the transfer. Such knowledge on the part of an officer of a company, however, does not meet the requirements of the statute which provide that the secretary of the corporation shall be notified "in writing." This question is likewise disposed of by our conclusion in the *Maloney* case.

III. It is contended that, at or about the time of the levy of the execution, the sheriff and the representative of the receiver were notified by an officer of the corporation that the stock had been pledged as collateral security. It is the contention that, by reason of such oral notification at said time, the lien of the levy of the execution was junior to the lien of the pledge to the plaintiff. It appears that the conversation referred to took place after the sheriff had served the notice of the levy. Furthermore, such oral notice to the officer at the time was not sufficient compliance with the statute, and does not render the levy of the execution junior to such outstanding pledge, where the statutory notice has not been given. See. the *Maloney* case and the authorities therein cited.

IV. It is contended that proper notices were served on the secretary of the company on July 3, 1924, and also on the sheriff on July 5, 1924. Said notices, however, were after the execution had been duly levied, and could not affect the validity of the same. On this branch of the case, following the rules heretofore announced and re-affirmed in the *Maloney* case, the decree of the district court in respect to rendering said shares of stock subject to the levy of the execution by the sheriff must be, and the same is, reversed.

V. The defendant Fisher was one of the makers of the notes held by the plaintiff and interveners. The notes were given for the purchase of certain stock in the Farmers Automobile Insurance Company. At or about the time the notes in suit were executed, the plaintiff and the interveners transferred their shares of stock in said company to the makers of said notes, and the said shares of stock were then reassigned to the plaintiff, as

trustee, to be held as collateral security for the payment of said notes. This was in May, 1921. On the 6th day of August, 1921, Fisher sold all of his interest in the Farmers Automobile Insurance Company and the Interstate Liability Insurance Company and the Gardner Mortgage & Trust Company to the defendant N. Hampe. A written agreement was entered into between Fisher and said Hampe, at the time, by the terms of which Hampe agreed to and did assume all liabilities and obligations and notes outstanding that had been signed by Fisher in connection with said insurance companies. On or about the 26th of October, 1921, a supplemental agreement was entered into between Hampe and Fisher, by which Hampe again agreed to protect and hold the said Fisher harmless and free from any liability on said notes. It is the contention of Fisher that the plaintiff was informed of said agreements between him and Hampe, and acquiesced therein, and recognized Hampe as the debtor on said obligations; and that, because thereof, Fisher is released. The general rule of law applicable to such a situation is thus stated by Professor Williston, in 1 Williston on Contracts 783:

"Doubtless parties to bilateral contracts frequently attempt to effect the substitution of the liability of a new party for that of one of the original parties, and frequently call such an attempted transaction an assignment. By whatever name the parties may call the transaction, if it is made clear that the so-called assignor intends by the transaction to be free from all further liability, it seems that acceptance, by the other party to the contract, of any subsequent performance from the so-called assignee would amount to assent to a proposed novation, and the so-called assignor would be discharged from further liability."

Hampe did assume and agree to pay the obligations and to hold Fisher harmless from liability thereon. This is not questioned. Did plaintiff acquiese in said agreement and accept Hampe as the new debtor?

It is a familiar rule that the mere fact of the making of a new contract by which a third party becomes obligated to pay to the creditor the previous existing indebtedness of a debtor does not alone give rise to a presumption that the creditor accepts the new debtor and releases the original debtor; and the

question as to whether or not there was such a release is one of fact, to be determined by all the evidence in the case. In *Michigan Stove Co. v. Walker & Co.*, 150 Iowa 363, we said:

"Such release may, of course, be established, like any other agreement, by proof of facts and circumstances from which the implication of such release would reasonably arise."

See, also, *Walker v. Wood*, 170 Ill. 463 (48 N. E. 919); *Cutting v. Whittemore*, 72 N. H. 107 (54 Atl. 1098); *Dunbar v. Steiert*, 31 Ariz. 403 (253 Pac. 1113); *De Witt v. Monjo*, 46 App. Div. 533 (61 N. Y. Supp. 1046); *Parish Mfg. Corp. v. Martin-Parry Corp.*, 285 Pa. St. 131 (131 Atl. 710); *Union Cent. Life Ins. Co. v. Hoyer*, 66 Ohio St. 344 (64 N. E. 435).

The trial court found, and correctly so, as shown by the record, that there was a direct conflict in the evidence as to the claimed notice given by Fisher to the plaintiff that Hampe had assumed said obligations. The trial court, however, found that there was sufficient evidence in the case to corroborate Fisher as to the correctness of his statement in this regard. From an examination of the record, we are constrained to acquiesce in this conclusion by the trial court.

We think the evidence is sufficient to bind plaintiff to knowledge of this agreement. Did he acquiesce? It appears from the record that, after the execution of the contract with Hampe, Fisher had practically nothing whatever to do with any of said insurance companies. The interest on the notes was paid by other parties thereto, and none of it was contributed by Fisher. We think, under the record, that the plaintiff knew this. There were changes made in the certificates of stock that were originally held by the plaintiff as collateral security. New certificates of stock were substituted with the plaintiff for those that were originally held as security for the indebtedness. These new certificates were none of them issued in the name of Fisher, but were issued direct to Hampe, who had assumed the obligations of Fisher, and were thereafter deposited by Hampe with the plaintiff, as security for said indebtedness, in lieu of the former collateral. He accepted them. The interest on the notes was in arrears, but the plaintiff never made any demand on Fisher for payment of the notes or interest. In fact, no claim was asserted against Fisher on the notes after his contracts

with Hampe until this suit was brought. It appears that, after said contract was made, and after it is claimed the plaintiff received notice thereof, he at all times thereafter dealt exclusively with said Hampe and two other parties, in connection with said indebtedness and the security therefor, and had no dealings thereafter with Fisher in regard to said matters, although he saw him frequently. We have not attempted to detail all of the evidence, but only sufficient to indicate that there is corroboration in the record of the claim of Fisher that the plaintiff was informed of the contracts between Fisher and Hampe, and acquiesced therein, and thereafter recognized Hampe as the debtor upon the obligations of Fisher, and released Fisher from said obligations. We are not disposed to disturb the finding of the trial court on this fact question, under the record. No question is raised but that, if plaintiff is bound, the interveners are bound also by his acts, as their trustee.

Reaching the conclusion that, upon the record, the release of Fisher upon the notes in suit is established as a fact, it is unnecessary for us to consider other questions involved in the appeal. The decree of the trial court is —*Reversed on defendants' appeal; affirmed on plaintiff's and interveners' appeal.*

STEVENS, C. J., and EVANS, ALBERT, and WAGNER, JJ., concur.

KINDIG, J., takes no part.