\*In re Estate of Morris A. Talbott.

John H. Himmelberger, Appellee, v. Central State Bank, Administrator, Appellant.

No. 39460.

---

\* This opinion was not delivered to the reporter until July 30, 1930; hence could not be published before.

April 2, 1929.

Petition for Rehearing Withdrawn October 4, 1929.

*Nourse & Nourse,* for appellant.

*Lehmann, Seevers & Hurlburt* and *Oliver & Oliver,* for appellee.

Faville, J.—This is the third time that this cause has been in this court. The opinions in the former appeals are found in 200 Iowa 585 and 204 Iowa 363. The main facts are sufficiently set forth in the opinions in the former appeals, and it is only necessary that we refer to them very briefly, to present the questions submitted on this appeal.

In 1905, four parties, Talbott, Himmelberger, Beach, and McConnell, formed a partnership, under the name of "M. A. Talbott & Company." Later, the same parties organized a corporation called "The M. A. Talbott Company." The general business conducted by both was the construction of public improvements. The personnel of the partnership changed. Beach and McConnell passed out of the partnership. The notes in suit were all made payable to the order of the appellee, Himmelberger. They were signed by the partnership M. A. Talbott & Company, and by Talbott and Himmelberger. There is no substantial dispute of the fact that the original notes that were so executed were given to appellee for the purpose of raising

funds to be used in the partnership business; that they were negotiated by the appellee; that the proceeds were so used; and that subsequently the appellee took up said notes, and now holds them.

I. Appellant moved for a directed verdict, on the ground that the evidence upon the instant trial discloses that there was a complete novation respecting the notes in suit, and that the appellant was relieved of liability thereon by virtue of the assumption of the same by the said corporation. As we understand the record, a minute book of the corporation was produced upon this trial, which had not been offered in evidence at the former trials, and under date of July 6, 1907, said minute book contained an entry by which the corporation assumed and agreed to pay, at the maturity thereof, all of the indebtedness of the said copartnership. It is contended that this proposition was accepted by the corporation, and that a contract was entered into on July 8, 1907, in accordance therewith.

More than four years later, to wit, on September 12, 1911, the partnership and the corporation entered into a written contract, which is, in part, as follows:

"This agreement made and entered into this 12th day of September, 1911, by and between M. A. Talbott & Company, a partnership consisting of M. A. Talbott of Rome, New York, and John H. Himmelberger, of Cape Girardeau, Missouri, hereinafter referred to as 'the partnership' and 'The M. A. Talbott Company,' of Baltimore City, a corporation organized and existing under the laws of the state of Maryland, hereinafter referred to as 'the corporation,' witnesseth: * * * It is now hereby agreed by said corporation, that in consideration of the acts, services, and agreements of said partnership as hereinbefore enumerated, said corporation hereby assumes and takes over as its own, all the liabilities and obligations of said partnership and also agrees to convey to said partnership eight hundred fifty-four (854) shares of the common capital stock of said corporation, heretofore held as treasury stock.

" [Signed]
"John M. Himmelberger          M. A. Talbott & Company.
"Morris A. Talbott                         By Morris A. Talbott
                              "The M. A. Talbott Company
                                   "By Morris A. Talbott."

It is not contended by appellant that the transaction of July, 1907, constituted a novation, or anything more than an assumption of the debt by the corporation. But appellant insists that the contract of September 12, 1911, went further, and contains all the essential elements of a novation.

It is the general and well recognized rule that the necessary legal elements to establish a novation are parties capable of contracting, a valid prior obligation to be displaced, the consent of all parties to the substitution, based on sufficient consideration, the extinction of the old obligation, and the creation of a new one. *Kirchman v. Standard Coal Co.*, 112 Iowa 668; *Benton v. Morningside College*, 202 Iowa 15; *Foster v. Paine*, 63 Iowa 85; *Harrington-Wiard Co. v. Blomstrom Mfg. Co.*, 166 Mich. 276 (131 N. W. 559); *Parsons Mfg. Co. v. Hamilton Ice Mfg. Co.*, 78 N. J. Law 309 (73 Atl. 254); *McAllister v. McDonald*, 40 Mont. 375 (106 Pac. 882); *Hemenway v. Beecher*, 139 Wis. 399 (121 N. W. 150); *Miles v. Bowers*, 49 Ore. 429 (90 Pac. 905). With these rules in mind, we turn to a consideration of the record in this case, to determine whether or not the contract of September 12, 1911, constituted a novation.

II. At the time of the execution of the contract of September 12, 1911, the appellee occupied a double role: he was a creditor of the partnership, by virtue of his having taken up the notes in suit from the indorsee, and he was a member of the partnership, and liable as such for his proportionate share of the indebtedness evidenced by the notes.

Was the appellee, as a creditor, a party to the contract of September 12th, so that, as such creditor, it constituted a novation? It is contended that the appellee was not a party to the contract, except as a member of the partnership. By the introductory recitals quoted supra, the contract purports to be an agreement between the partnership and the corporation only. Appellee is described therein as a member of the partnership. He signed it personally. It is contended that such signature was only as a witness, and not as a party to the instrument. He testified:

"Q. This contract, afterward, on the 12th day of September, 1911, and of that date, which has been identified, on pages 71 and 72 of the minute book, that the reporter has marked

Exhibit 1, you and the other parties executed that contract as there set forth? A. Yes; I acknowledge that."

We are disposed to hold that, under the record, the appellee became a party to the contract, and consented to its terms and provisions and acquiesced therein.

III. We are still confronted with the question: Did the contract effectuate a discharge of the partnership liability to the appellee on the notes in suit, and a substitution of the corporation as the debtor thereon?

One of the essential elements of a novation is the extinction of the old obligation, the discharge of the old debtor, and the creation of a new obligation from a new debtor. In the recent case of *Reimers v. Tonne,* 207 Iowa 1011, we said:

"It is a familiar rule that the mere fact of the making of a new contract by which a third party becomes obligated to pay to the creditor the previous existing indebtedness of a debtor does not alone give rise to a presumption that the creditor accepts the new debtor and releases the original debtor; and the question as to whether or not there was such a release is one of fact, to be determined by all the evidence in the case. In *Michigan Stove Co. v. Walker & Co.,* 150 Iowa 363, we said: 'Such release may, of course, be established, like any other agreement, by proof of facts and circumstances from which the implication of such release would reasonably arise.' See, also, *Walker v. Wood,* 170 Ill. 463 (48 N. E. 919); *Cutting v. Whittemore,* 72 N. H. 107 (54 Atl. 1098); *Dunbar v. Steiert,* 31 Ariz. 403 (253 Pac. 1113); *De Witt v. Monjo,* 46 App. Div. 533 (61 N. Y. Supp. 1046); *Parish Mfg. Corp. v. Martin-Parry Corp.,* 285 Pa. St. 131 (131 Atl. 710); *Union Cent. Life Ins. Co. v. Hoyer,* 66 Ohio St. 344 (64 N. E. 435)."

Applying this rule to the instant case, we are confronted with the necessity of determining whether or not the appellee released the partnership as his debtor and accepted the corporation as his new debtor.

Stress is laid upon the use of the words "hereby assumes and *takes over as its own* all the liabilities and obligations of said partnership" in the contract. It is argued that the debts of the partnership had already been *assumed* by the transaction of July, 1907, and that something other and different was meant

by the parties by the use of the words "takes over as its own," which were embodied in the contract of September 12, 1911. The argument is that, by consenting to this contract, appellee agreed that the corporation should take over all the debts of the partnership "as its own," and thereby it was the intention of the appellee to release the partnership and accept the corporation as the new debtor.

The ultimate question at this point is: Did the appellee, by acquiescing in this contract, bind himself that the corporation should *alone* thereafter be liable on the partnership debts? We do not think that the words "takes over as its own" of themselves should be construed as being a release by appellee of the partnership from all liability on its outstanding obligations. The intent of the parties is the important matter to be considered in this connection. There is nothing in the contract which in terms released the debtor, the partnership, from its obligations which the corporation agreed by the contract to assume and take over as its own. Nor did the contract in terms make any provision by which the creditor, the appellee, consented to accept the corporation as debtor, in lieu of the partnership. The conduct of the parties is proper to be considered, as it may bear upon the construction given the contract by them. *Dalton v. Treinen*, 191 Iowa 1185; *Tooey v. Percival Co.*, 192 Iowa 267.

Appellant contends that, after the making of said contract of September 12, 1911, the appellee did not call upon the decedent Talbott to pay said notes. All the payments that were made after said date were made by the corporation from its funds. Talbott died in April, 1922.

The fact that the appellee did not make demand upon the decedent Talbott for the payment of the said notes after the execution of the contract of September 12, 1911, during his lifetime,—a period of more than ten years,—is of significance, as tending to indicate an intention on the part of the appellee not to recognize the notes as the obligation of the partnership. During this period of time, the payments that were made upon the notes were made by the corporation. On the other hand, however, it is of significance, as tending to show that the appellee did not intend to release the partnership from its obligation on said notes, although also looking to the corporation, under its contract, that, in September of 1918, Himmelberger was en-

deavoring to maintain the status of said notes by securing the payment of a portion thereof, which he evidently deemed to be important for that purpose. One Rule, who was a former employee of the partnership and the corporation, testified regarding the transaction of September, 1918, in part, as follows:

"On that occasion there was discussion as to what the M. A. Talbott Company could pay on all these six notes in evidence, as I recall. I remember telling Mr. Talbott and Mr. Himmelberger both that the state of the funds of the company was such that we could not do anything more than make a very small payment. * * * Mr. Himmelberger told Mr. Talbott, discussing the matter, that it was an important thing that the status of those notes be preserved, and we all understood, to accomplish that, that payments should not be allowed to lapse too long. Mr. Talbott said, 'All right,' and Mr. Talbott instructed me to make the payments."

It is also of some significance that no effort was made to take up the original notes and to substitute the notes of the corporation therefor. There is nothing in the record to indicate that Talbott at any time requested or claimed a right to a surrender of the partnership notes and substitution of corporation notes therefor. In 1918, it is evident from the record that Talbott considered the notes as existing obligations of the partnership, and was willing to comply with the appellee's request, to avoid the running of the statute of limitations, as the parties evidently understood it was necessary to do. In view of the entire record in the case, we are of the opinion that the contract itself did not, in terms, contain any agreement on the part of the appellee to release the partnership from its obligations to him and to accept the corporation as a new debtor in lieu thereof, and that the acts and conduct of the parties after the execution of such contract tend, on the whole, to support the contention of the appellee that such was not the intention of the parties.

IV. Over objection, the appellee, as witness in his own behalf, was permitted to testify that, when said contract was executed, he did not intend thereby to in any way release his

 claim against the partnership or the individual members thereof upon the notes in suit. Under the facts disclosed in this case, we think the testimony was admissible. In *Brannen v. State Exch. Bank,* 190 Iowa 630, we said:

"It is further contended that the court erred in admitting the answer of the plaintiff in her deposition as to her intent to discharge the defendant bank from liability. We hold the evidence competent. The defendant alleged, by way of defense in his answer, that plaintiff had made a settlement with her brother, and thereby substituted him as her debtor instead of the bank, and that she thereby ratified her brother's act in applying the certificate of deposit to his personal indebtedness to the bank. This issue was submitted to the jury under proper instructions. A person's intent may be a material fact. Declarations of a person regarding his intention, when his intention is a material fact in the case, are admissible in evidence. *Kruse v. Seiffert & W. Lbr. Co.,* 108 Iowa 352; *Helm v. Anchor Fire Ins. Co.,* 132 Iowa 177; *Larson v. Thoma,* 143 Iowa 338."

V. It is contended that appellee was not a competent witness as to personal transactions between him and the decedent Talbott, under Section 11257, Code, 1924. Said section did not  bar appellee from testifying as to his intentions or purposes. These do not constitute "personal transactions," within the contemplation of the statute. *Campbell v. Collins,* 133 Iowa 152; *Gray v. Sanborn,* 178 Iowa 456; *In re Estate of Newson,* 206 Iowa 514.

VI. Other questions argued are covered by the opinions in the former appeals. We find no error requiring reversal, and the judgment appealed from is—*Affirmed.*

ALBERT, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.