WADE & WADE, Appellees, v. CENTRAL BROADCASTING COMPANY, Appellant.

No. 44934.

NOVEMBER 14, 1939.

Stipp, Perry, Bannister & Starzinger, for appellant.

Bump, Graeser & Bump, for appellees.

MITCHELL, J.—Wade and Wade are husband and wife and are acrobats of long experience. Central Broadcasting Company is the proprietor of a radio station, commonly known as WHO. In December, 1937, January and February, 1938, Central had a department of its business known as WHO Artists Bureau. This department of the corporation was engaged in the business of employing acrobats and artists for entertainment purposes, and selling these acts to fair associations. Irving Grossman was manager of the Artists Bureau.

In December of 1937, Jack Wade, one of the members of the acrobatic team of Wade and Wade entered the employ of Central. He was to receive a salary of $125 per month. His duties consisted in assisting Mr. Grossman in the operation of the booking agency and in the selling of acts to county fair associations. In January and February of 1938, contracts were entered into between Central Broadcasting Company and various fair associations to furnish them at their coming fairs in the late summer, certain acts including the act of Wade and Wade. There were contracts with many associations but the only ones involved in this controversy are the Fort Dodge Stock Show held the 6th, 7th, 8th and 9th of September and the Ord Nebraska Fair the following week, September 12th and 13th.

Following the signing of these contracts, Central Broadcasting Company through the manager of the Artists Bureau entered into an oral contract with Wade and Wade to perform at the Fort Dodge and Ord Fairs at the agreed price of $125 per week.

A dispute arose between Mr. Grossman and Wade and Wade, and he refused to let them perform either at Fort Dodge or Ord, and they were not paid for those two weeks.

This suit was commenced to recover the amount of $250 by Wade and Wade against the Central Broadcasting Company. The company filed a general denial, coupled with allegations that Wade and Wade had been employed by WHO Radio Enterprises a separate corporation. There was a trial. At the close of the evidence both sides made motions for a directed verdict, the lower court sustained the motion of Wade and Wade and entered judgment against Central for $250 and costs. The company has appealed, alleging as error the overruling of its motion, which is as follows:

"1. That from the undisputed evidence it now appears that the contract of Wade & Wade was with WHO Radio Enterprises, Incorporated, and not with Central Broadcasting Company, the defendant in this suit. That any agreement or understanding plaintiffs might have had with Central Broadcasting Company prior to the creation of WHO Radio Enterprises, Incorporated, was assigned to the latter corporation after its formation and must as a matter of law have been merged in the written instrument to which the new corporation was then a party.

"2. That an oral agreement between the plaintiffs and Central Broadcasting Company would be and was inconsistent with the terms at the same time of a written contract, Exhibit 1, and that any prior oral agreement or understanding could not have subsisted independently and must therefore have been discharged.

"3. That plaintiffs have failed to prove by any evidence that this defendant discharged plaintiffs or caused their discharge, violated any contract or ·committed any tort against the plaintiffs, but that if any wrong was done to the plaintiffs it was committed by an independent third party, WHO Radio Enterprises Incorporated."

 A reading of this record plainly shows that there was an oral contract between Central and Wade and Wade to perform at the Fort Dodge and Ord Fairs at the agreed price of $125 per week. This is not strenuously disputed by the appellant. Its defense is that in the latter part of May or early in June 1938, there was organized a separate and distinct corporation known as WHO Radio Enterprises, Inc. That to this new corporation there was transferred all of the contracts for enter-

tainment at the various fairs that Central Broadcasting Company had entered into. That on the 22nd day of July, 1938, Wade and Wade signed a written contract with WHO Enterprises, Inc., and that it was the new corporation rather than the old one that was indebted to them, if they had anything coming. The appellants cite many cases on the doctrine of merger and novation. We have no fault to find with the legal principles laid down in the cited cases, the trouble is that the facts in this case do not sustain the legal propositions relied upon.

The Central Broadcasting Company was not hiring talent, to wit, Wade and Wade, to put on performances unless it first could sell that talent to the fair associations.

Early in January the managers of the fair associations met in Des Moines and witnessed the performances including that of Wade and Wade. Contracts were then entered into between Central and the fair associations. Central Broadcasting Company then entered into a contract with Wade and Wade to perform at the various fairs, where the act had been sold including Fort Dodge, Iowa, and Ord, Nebraska. At the time that the contracts were entered into with the various fair associations and Wade and Wade, there was no such corporation as WHO Enterprises, Incorporated. The Central Broadcasting Company says that it is relieved from its liability because Wade and Wade entered into a written contract with the new corporation. The legal principle involved in this is that the appellant claims a novation. To effect a complete novation it must be proved that the creditor, debtor and the new corporation all agreed that the new corporation shall assume the obligation, and that the creditor shall be relieved from any further liability. The written contract which Wade and Wade signed with Enterprises, Inc., and which is relied upon by appellant, simply authorized Enterprises, Inc., to act as booking agent for Wade and Wade. Nowhere in the contract does Enterprises, Inc., employ Wade and Wade nor does it agree to pay them one single penny. Nor is there any testimony that Wade and Wade agreed to accept Enterprises, Inc., as their debtor nor does it in any way attempt to relieve Central Broadcasting Company from its obligation to Wade and Wade.

This contract with Enterprises, Inc., was entered into several months after the engagements at Fort Dodge, Iowa, and

Ord, Nebraska, had been made. The defense of novation is a burden assumed by the appellant.

In the case of Re Estate of Talbott, 209 Iowa 1, 4, 224 N. W. 550, 552, this court said:

"It is the general and well recognized rule that the necessary legal elements to establish a novation are parties capable of contracting, a valid prior obligation to be displaced, the consent of all parties to the substitution, based on sufficient consideration, the extinction of the old obligation, and the creation of a new one."

In Reimers v. Tonne, 207 Iowa 1011, at page 1016, 221 N. W. 574, at page 576, this court said:

"It is a familiar rule that the mere fact of the making of a new contract by which a third party becomes obligated to pay to the creditor the previous existing indebtedness of a debtor does not alone give rise to a presumption that the creditor accepts the new debtor and releases the original debtor, and the question as to whether or not there was such a release is one of fact, to be determined by all the evidence in the case. In Michigan Stove Co. v. Walker & Co., 150 Iowa 363, we said:

" 'Such release may, of course, be established, like any other agreement, by proof of facts and circumstances from which the implication of such release would reasonably arise.' "

Clearly under this record there is no evidence of the consent of all parties to the substitution of Enterprises, Inc., for Central Broadcasting Company.

Finally appellant argues that they did not discharge appellee, with this we cannot agree. Wade and Wade traveled to Fort Dodge and were ready to perform. Mr. Grossman, the manager of the Artists Bureau called Mr. Sam Stump, the manager of the Fort Dodge Fair and got him to agree to use other talent than Wade and Wade at Fort Dodge. Mr. Grossman told Wade and Wade at Fort Dodge they would not be used at Ord, Nebraska. It necessarily follows that the lower court was right in directing the verdict.—Affirmed.

OLIVER, C. J., and RICHARDS, HAMILTON, BLISS, HALE, and MILLER, JJ., concur.