DIXIE COTTON OIL COMPANY *v.* MORRIS.

Opinion delivered May 14, 1906.

1.  CORPORATION—FORMATION OF PARTNERSHIP—EVIDENCE.—If a corporation can enter into partnership with individuals for the operation of a business other than named in its charter, where such a venture is foreign to the scope of its ordinary charter powers and to its established business policy, those who assert that such a contract was made by the president of the corporation must be held to prove either express authority from the board of directors or acquiescence in or ratification of the contract sued on, or of similar contracts made by him, on the part of the board of directors or shareholders. (Page 117.)

2.  PARTNERSHIP DEBTS—LIABILITY OF RETIRING MEMBER.—Where, upon the retirement of a member of a firm, the name of the firm was changed, and a creditor corporation, through its president, was notified of the change, the retiring member will not be liable for subsequent advances made by the creditor to the firm. (Page 119.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed in part.

STATEMENT BY THE COURT.

The plaintiff, Dixie Cotton Oil Company, was a Tennessee corporation engaged in the cotton seed oil business, as its name implies, and operated a mill near Little Rock, of which defendant Conley was manager during the period covering the transaction out of which this litigation grew. This action was commenced at law against the defendants, W. N. Morris, G. W. Morris, J. M. Nix and L. H. Conley, as partners, to recover the sum of $4,344.45 alleged to be due on account.

The complaint alleged that W. N. Morris, Nix and Conley were partners under the name of the Morris-Nix Gin Company, and as such became indebted to the plaintiff on open account in the sum of $3,651.65. That in 1901, G. W. Morris bought out Nix's interest in the firm, assuming Nix's liabilities, and the name of the firm was changed to Morris & Co.; and that the latter concern became indebted to the plaintiff in the sum of $692.80 on open account. That Nix was never released from his liability, and, having given no notice of withdrawal from the firm, he is liable for the entire indebtedness.

Nix answered, denying the partnership, denying the indebtedness, and alleging that the plaintiff was a partner in the Mor-

79—8

ris-Nix Gin Company and also in the firm of Morris & Company, its interest therein being held in the name of the defendant Conley, who was manager of plaintiff's mill; that the plaintiff and the defendant W. N. Morris purchased all of defendant's interest in the partnership, and assumed the debts. He made his answer a counterclaim, and alleged that the Morris-Nix Gin Company owed him personally the sum of $600 due for an old gin, and for this he prays judgment.

The plaintiff replied, denying the allegations of Nix's counterclaim.

Conley answered, denying that he was a member of the partnership, alleging that he became a member of the Morris-Nix Gin Company and of Morris & Company only as a representative of the plaintiff, and that the planitiff was really the partner.

W. N. Morris answered, denying that he, Nix and Conley were partners under the firm name of the Morris-Nix Gin Company, denying the indebtedness of that company to plaintiff, alleging that the real partner with this defendant and Nix was the Dixie Cotton Oil Company, represented by said Conley by direction of E. S. Proudfit, president of plaintiff.

G. W. Morris answered, setting up the same facts.

On motion of plaintiff the cause was transferred to equity, where a trial upon the pleadings and proof resulted in a decree dismissing the complaint for want of equity as to defendants W. N. Morris, G. W. Morris and J. M. Nix, and in favor of the plaintiff against defendant Conley for recovery of the sum of $4,940.25, from which decree the plaintiff and defendant Conley appealed to this court.

*Marshall & Coffman* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The decree of the chancellor is not sustained, either by the pleading or the proof. This court has held that allegations and proof must correspond, and that proof without allegations is as bad as allegations without proof. 25 Ark. 570; 46 Ark. 96; 29 Ark. 500; 41 Ark. 393; 30 Ark. 612; 49 Ark. 94.

2. The president of a corporation has no power to embark the corporation in a partnership venture. 2 Cook on Corp. § 716; 2 Morawetz on Corp. § 580; 62 Ark. 33, 41.

3. By the terms of the company's charter, it could not enter

into a partnership, even by direction of all the directors. It had no power to enter into a partnership, nor to go into the ginning business. 1 Morawetz on Corp. § 421; 10 Gray, 582; 70 Ga. 509; 121 N. Y. 582. While it is true that where all the stockholders of a corporation know that it has entered into an *ultra vires* venture, and yet receive the profits, they will not be allowed to repudiate it, that case is not made out here. No one connected with the corporation knew of it save Proudfit, and the corporation derived no profit from it. 14 Wall. 577; 2 Morawetz on Corp. § 581.

*Mehaffy & Armistead,* for appellees, W. N. and G. W. Morris.

The facts show that the president of the plaintiff corporation advanced the money represented in the account in suit, out of the corporation's treasury, to Conley for his investment in the partnership. The court properly awarded judgment against the person to whom the money was advanced. In actions against persons jointly and severally liable judgment may be rendered against one or more, according to the proof. 11 N. Y. 294; 15 Barb. 525. As to variance and the power of the court to award such recovery as seems just, see 67 Ill. App. 678; 154 N. Y. 648; 51 N. Y. Sup. 42; Kirby's Digest, §§ 6140, 6141. Where no objection is made to evidence, the complaint must be considered as if amended to conform to it. 40 Ark. 352; 62 Ark. 265; 65 Ark. 422; 67 Ark. 426; 43 Ark. 451.

*W. E. Atkinson,* for appellee, Nix.

McCULLOCH, J., (after stating the facts.) The first and main question presented is whether or not the plaintiff corporation could, as a matter of law, become a copartner with the defendants in the gin business, or did, as a matter of fact, enter into a partnership contract with them.

The evidence on this point is derived almost entirely from the testimony of defendant Conley as to his alleged agreement and transaction with E. S. Proudfit, the president of plaintiff corporation, and certain correspondence between them, which was read in evidence. Proudfit died before the commencement of this action, and Conley's version of the transaction between them is uncontradicted, except by circumstances and by contradictory

statements alleged to have been made by him concerning the transaction. He testified, in substance, that while he was manager of plaintiff's mill and business at Little Rock, defendant W. N. Morris came to him with a proposition to put up a gin at Scott's Station, near Little Rock, and that he (Conley) went to Memphis, and laid the proposition before Proudfit, and advised him to go into the arrangement, so as to control the purchase of seed at that place. That Proudfit acceded to the proposition, and decided to go into partnership with Morris and Nix, taking a third interest, but, in order to conceal from competitors the interest of the plaintiff therein, it was decided to conduct the transaction in his (Conley's) name, and it was accordingly done. Articles of partnership were drawn up and signed by Morris, Nix and Conley, and the gin business was operated through two seasons, the first season being profitable, but they lost money the last season.

The advances of money made by plaintiff were through the Little Rock office, and were charged on the books of the Morris-Nix Gin Company and Morris & Company, the two accounts on the books aggregating $12,246.18. After deducting credits, the accounts show debit balances against the defendants in the amounts sued for.

Defendants, in corroboration of Conley's statement that Proudfit agreed to go into the partnership arrangement, introduced in evidence a letter from Proudfit to Conley bearing date a few months prior to date of articles of copartnership between defendants, containing the following sentence:

"If you can get a good ginning point, we would not mind going, say, one-third, provided the managers are responsible people."

On the other hand, Conley admits that he never, until after the commencement of this suit, informed any of the other officers of plaintiff company or persons interested in its affairs, or even the bookkeeper in the Little Rock office of the company, of this partnership arrangement between the plaintiff company and the defendants.

Mr. Falls, the owner of about half of the capital stock of plaintiff company, who succeeded Proudfit as president during the pendency of the alleged partnership, testified that he frequently talked with Conley about the indebtedness of Morris-

Nix Gin Company to plaintiff, and had a great deal of correspondence with him concerning the same subject, and that the latter never spoke or wrote any intimation that plaintiff was interested as partner in the gin business.  He further testified that neither Proudfit nor Conley were authorized by the board of directors to enter into any partnership or to embark in the gin business.

J. A. Austin, Jr., secretary of plaintiff company, testified that he occupied the same office with Proudfit during business hours, and was generally present during conferences between Proudfit and Conley concerning the affairs of the company, but never heard anything said about a partnership in the gin business.  On the contrary, he testified that Conley told him that he owned an interest in this gin, and "considered it very foolish to have gone into it to help the affairs of the Dixie Cotton Oil Company, and assumed the responsibility himself."

Mr. Manire, the bookkeeper in the Little Rock office of plaintiff, testified that he kept the account against Morris-Nix Gin Company under Conley's direction, and that the latter never informed him that plaintiff was interested in the gin business, otherwise than as creditor, but frequently discussed the gin business as a personal venture of his own.

Waiving a discussion of the power of the plaintiff corporation to enter into a contract of copartnership with individuals for the operation of a business other than that named in its charter, it can safely be said in this case that such a venture is so foreign to the scope of its ordinary charter powers and to its established business policy, as shown by the evidence, that those who assert the existence of such a contract made by Proudfit, the president of the company, must be held to some proof of his authority to enter into such contract, either by express direction of the board of directors or by acquiescence in or ratification of this or similar contracts made by him on the part of the directors or shareholders.  No such proof appears in the record.  No authority was ever given by the board of directors, no similar contract was ever made by the corporation or its officers in its name, and the existence of this alleged contract was never brought to the attention of the directors or stockholders during its pendency.  Therefore there could have been no ratification of such contract, if it was ever made by Proudfit.

It does appear, however, that Proudfit was given the fullest latitude in making advances of money directly and indirectly in order to procure seed for the mill. It is shown, in the first place, that getting seed to crush was the life of the mill business. Mr. Falls testified that the stock in plaintiff corporation was held by members of the Proudfit and Falls families, Proudfit controlling about one-half and he (Falls) the other half, and that the affairs of the company were managed as a partnership; that he and Proudfit conferred with each other about the operation of the business, but never questioned the acts of each other. Whatever one did the other acquiesced in. He testified further that both Proudfit as president of the corporation and Conley as manager had authority to advance money to ginners and others for the purpose of getting seed, and that his understanding was that Proudfit advanced money to Conley to go into this gin business. It is true he stated further that he considered it an individual loan made by Proudfit, but it was nevertheless a fact that the loan was made with funds of the corporation, and the defendants Morris and Nix can not be held responsible for money loaned by Proudfit to Conley because funds of the corporation were used for that purpose.

It follows, therefore, that Morris and Nix were not liable to plaintiff for money loaned or advanced to Conley. They did not borrow the money nor agree to repay it. They went into the partnership agreement with Conley in good faith, and are not liable for the amount of his (Conley's) contribution to the capital stock of the copartnership, regardless of the source whence the money came. Conley alone was responsible to plaintiff for that, and the chancellor was right in so holding. Nor does the fact that the money was charged to the copartnership on the books of plaintiff make them liable. They were not cognizant of the way in which the account was kept on plaintiff's books, and were not chargeable with knowledge of that fact. But this only applies to the amount advanced to Conley and contributed by him to the capital stock of the copartnership. All amounts advanced in excess of such contributions were made to the copartnership as advances on seed, and must be so treated. The account shows that a large part of the same was for money ad-

vanced on seed. The partners are each and all liable to plaintiff for that part of the account.

The result works out as follows: Of the sum of $3,651.65 claimed by the plaintiff against the Morris-Nix Gin Company the sum of $2,493.83 represents the contribution of Conley to the capital stock of the copartnership. Conley alone is liable for that, and the other members of the firm are entitled to credit for that sum. W. N. Morris testified that that was the amount contributed to the capital of the firm by each partner, and his testimony is not contradicted.

The sum of $150 charged to the firm on the account as paid to Nix as part of the price of his interest on retirement from the firm also represents a part of Conley's contribution to the capital, and the other members are entitled to credit for that. Conley testified that the purchase of the Nix interest was agreed to by Proudfit. It is true, he says, that Proudfit was not then president of plaintiff corporation, but he also says that he was referred to Proudfit by Falls, who was then president. We think that his testimony, with that of Falls, is sufficient to establish Proudfit's authority still to make contracts for advances, notwithstanding he was not president.

Conley testified that he delivered to plaintiff, to cover the amount paid to Nix, notes of G. W. Morris, to whom the Nix interest was subsequently sold. The sum of $1,000 charged on the account is shown to have been drawn by Conley individually, and for which the firm was not liable. It was improperly charged to the firm, and must be deducted. This makes a total of $3,643.83 for which the defendants are entitled to credit, and leaves a balance of $7.82, for which the firm composed of W. N. Morris, Nix and Conley are liable to plaintiff.

The firm of W. N. Morris & Company, composed of W. N. Morris, G. W. Morris and Conley, are liable to plaintiff for the account against that firm, amounting to the sum of $692.80, with interest at 6 per cent. per annum from date of the commencement of this suit, and for which plaintiff should have had a decree. Nix had retired from the copartnership before this debt was contracted. The name of the firm was changed, and Conley, the manager of plaintiff's

business who made the advances, as well as Proudfit, was informed of his retirement.

The chancellor, therefore, erred in dismissing the complaint as to defendants W. N. Morris, G. W. Morris and Nix; and the decree, to that extent, must be reversed.

The finding of the chancellor that Conley's copartnership contract was an individual venture, and not merely as a representative of the plaintiff, and that the advances made to him by plaintiff were to be repaid, is sustained by a preponderance of the testimony, and the decree against Conley is affirmed.

The decree dismissing the complaint against W. N. Morris, W. G. Morris and J. M. Nix is reversed, and the cause remanded with directions to enter a decree against them in accordance with this opinion. But the amount found to be due by Nix is relatively too small, considering the amount of the account sued on and the involved nature of the demand, to justify a decree against him for costs. The costs below, as well as the costs of appeal, will be adjudged against the other defendants.

HILL, C. J., concurs in both the judgment and opinion in all matters except affirmance of the decree against Conley. As to that he concurs in the judgment for the reason that Conley has not prosecuted his appeal.