JACKS *v.* GREENHAW.

Opinion delivered December 16, 1912.

1. PARTNERSHIP—POWER OF PARTNER TO MORTGAGE PROPERTY.—A partner has authority to bind firm property by a chattel mortgage given to secure a firm debt, without the consent of the co-partner. (Page 619.)

2. SAME—POWER OF PARTNER TO ISSUE NEGOTIABLE PAPER.—As a rule, a firm is liable on the individual negotiable paper of one of its members, when it is shown that such paper was intended to bind the firm, and was given and accepted for a firm indebtedness. (Page 619.)

Appeal from Lee Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*H. F. Roleson,* for appellant.

1.   Wells had no authority to enter into a partnership or subpartnership with Greenhaw without Jacks's consent, and create a liability for which Jacks would be in any manner responsible.   He could not bring Greenhaw into the firm on a profit-sharing basis without Jacks's consent.   Any claim Greenhaw had against Wells on account of such subpartnership would be confined to redress against Wells alone, and the latter had no right to mortgage the partnership property for an obligation so created.   22 Am. & Eng. Enc. of L. 163, note 4; 43 N. W. 461; 56 Mo. 558; 37 U. S. (12 Pet.) 221; 24 Miss. 170; 6 Pa. 492; Century Dig., Partnerships, § 238; 1 Lindley on Partnership, 55.

2.   Jacks was not responsible for the personal defalcation of Wells as agent of the Water-Pierce Oil Company.   1 Lindley on Partnership, § 309.

*F. N. Burke, S. H. Mann* and *J. W. Morrow,* for appellee.

A firm is liable on the individual negotiable paper of one or more of its members, where such paper was intended to bind the firm, and was given and accepted for a firm indebtedness.   *30 Cyc.* 510, and cases cited.   See also *Id.* 497; 33 Ark. 475.

SMITH, J.   On May 25, 1912, George W. Greenhaw, the appellee, instituted a suit in the Lee Chancery Court. making J. C. Wells, doing business as the Jacks Transfer Company, and Dow Jacks defendants.

The complaint alleged that the defendant Wells had been engaged in business in the city of Marianna for several years under the name and style of the Jacks Transfer Company, and that on the 20th day of March, 1911, he had executed to the plaintiff, Greenhaw, his note for $2,006.45, payable on the 20th day of December, 1911; that several payments had been made, leaving a balance due of $1,698.45; that on the date of the execution of the note the defendant Wells conveyed to F. N. Burke, as trustee, for the purpose of securing the payment of said note, certain personal property, consisting of mules and wagons and what appears to have been the outfit with which the business of the Jacks Transfer Company was conducted.

Default was made in the payment of the note, and the

trustee undertook to take possession of the property and found it in the possession of the defendant Dow Jacks, who claimed to have been a partner with the said J. C. Wells at the time of the execution of the mortgage, and who refused to surrender the property to the plaintiff.

The defendant Dow Jacks filed a separate answer for himself and the Jacks Transfer Company, denying that J. C. Wells had been engaged in the business for the past number of years as the proprietor of the Jacks Transfer Company, but stated the truth to be that, for the past eight or nine years before the institution of the suit, the said Jacks had owned the transfer business, and that he had made an agreement with his codefendant, J. C. Wells, by which the said Wells was to actively manage the business for a salary of seventy-five dollars per month, with the understanding that he might become a partner when he paid off the partnership debts; that the note was not executed in the name of the partnership, but in the individual name of Wells, and the deed of trust was executed by him individually to secure this note, and the answer further denied that the money was borrowed for or used in the business of the transfer company, but states that it was for the use of Wells personally, and that the said Jacks had no knowledge of the deed of trust until in May, 1912, which was fourteen months after its execution.

It appears that the transfer company was a going concern when Wells was employed, making some money above expenses, but it also appears that its debts about equalled the value of its assets.

Wells filed no answer, but became the principal witness in the case, while Jacks did not testify at all. It appears that Jacks desired to start Wells, who was a brother-in-law, in the business, and that he placed him in charge of the transfer business. It appears that thereafter for more than six years Jacks gave no attention to the business and exercised no control whatever over it, although he lived within a mile and a half of Marianna. Wells's control appears to have been absolute, and he conducted the business as if it were purely a private enterprise. The proof shows that he sold the property of the partnership at will, and bought other property when he pleased, and that he borrowed money and executed notes

in the name of the Jacks Transfer Company or in his own name, without even consulting with or reporting to his co-partner.

It appears that among the number from whom Wells borrowed money was the plaintiff Greenhaw, and that he had an arrangement with him by which he secured $800 to be used in the wood and coal business, which Wells was conducting as a branch of his transfer business. This arrangement was entered into with the understanding that Wells would share with Greenhaw in the division of the profits of that branch of the business, but no profits were earned. It appears, too, that, to furnish business for the transfer company, Wells became the agent of the Water-Pierce Oil Company in handling oil, but this was not in the name of the transfer company for the reason, as explained by Wells, the oil company would not give an agency to a company name. But it appears that the transfer company derived all the benefits that resulted from the wood and coal business and the oil business. The accounts were kept as accounts of the Jacks Transfer Company, and the collections made by it and applied to its use. Persons who had extensive transactions with this transfer company testified that they never knew it was not the sole business of Wells. Greenhaw so testified. He was taken into a partnership with Wells in a business which was a subsidiary enterprise of the main business, and he testified that he retired from this connection without having ever known that Jacks was interested in any way in the business. No one contradicts this statement. Wells testified that Jacks knew what he was doing, and that he had authority for his acts, yet he does not appear to have disclosed to Greenhaw that the transfer business was not his private property. It appears that of this money, secured by the deed of trust which this proceeding was brought to foreclose, $438 was used to pay the oil company for oil furnished Wells, and $800 was for the money advanced by Greenhaw to operate the wood and coal business, and $262 was used in paying a balance due on the purchase price of some mules bought by the transfer company. Wells says that the remaining $500 was borrowed to buy wood and coal, and was "used for partnership business." Greenhaw had never received a cent of profit, and was given a note only for the exact

amount of money he had advanced Wells for the purposes here stated, and all of this was done, as he testifies without contra. diction, in utter ignorance of the fact that Wells did not have the unquestioned right to dispose of and manage the Jacks Transfer Company property as he had done. It appears further that when the note and deed of trust in suit were executed Wells took over for the benefit of the transfer company all of the assets that had belonged to Greenhaw and Wells in the wood and coal business, including outstanding accounts. It must be conceded that Wells was operating without due regard to the rights of Jacks, but those questions may be settled in a suit for accounting between themselves. After executing the deed of trust and after taking over such assets as Greenhaw and Wells owned at that time, Wells continued to operate the business until some time after the maturity of this note.

The question here is, whose debt was evidenced by this note? and we conclude that the chancellor was warranted in finding that the debt which the note evidenced was that of Jacks Transfer Company, and the plaintiff has the right to have his deed of trust foreclosed. The power of one partner to bind firm property by a chattel mortgage given to secure a firm debt, without the consent of the copartner, is generally recognized. 30 Cyc. 497; *Gates* v. *Bennett,* 33 Ark. 475.

And the application of the rule to the facts of this case is not defeated by the fact that the note secured by the deed of trust was signed in the individual name of Wells, for "as a rule the firm is liable on the individual negotiable paper of one or more of its members, when it is shown that such paper was intended to bind the firm, and was given and accepted for a firm indebtedness." 30 Cyc. 510, and cases cited.

Affirmed.