FOWLER *v.* FRANKLIN.

4-6244                                            148 S. W. 2d 663

Opinion delivered March 17, 1941.

---

*John H. Shouse, Merle Shouse* and *J. Loyd Shouse,* for appellant.

*M. A. Hathcoat,* for appellee.

SMITH, J. B. M. Magness was an original member of the firm of Magness Brothers, engaged in the general mercantile business at Western Grove. He had two children, a son, T. R., who had been admitted to membership in the Magness Brothers firm, and a daughter, Edna, who married S. L. Fowler. He wished to start his daughter and her husband in business, and to that end

he sent his son and son-in-law to Jasper, where a store building and a stock of goods were purchased, and a partnership was formed, composed of T. R. Magness, owning one-third, L. E. Fowler, owning a third interest, and Edna and her husband owning the remaining one-third. T. R. Magness gave directions for drawing the deed to the building, and, not knowing the exact wishes of his father as to how the deed should be prepared, had it made to T. R. Magness, B. M. Magness, and L. E. Fowler; but we think it certain that it was the intention to convey the property to the new partnership and that it became a part of the partnership assets. The date of this deed was February 13, 1923.

It was found that the partnership needed more space, and a portion of an additional lot was purchased and the title thereto was taken in the names of T. R. Magness, L. E. Fowler, and S. L. Fowler. This deed was dated March 5, 1923, and a part of an additional lot was purchased August 30, 1923, and that deed was drawn to L. E. Fowler, T. R. Magness, and B. M. Magness. A portion of another lot was purchased October 26, 1923, and the deed was drawn to L. E. Fowler, S. L. Fowler, and T. R. Magness. A quitclaim deed from B. F. Ruble—apparently executed for the purpose of clearing the title to these fractional lots—was executed to "Magness & Fowler," this being the firm name of the new partnership, but the deed does not recite who the members thereof were. This deed confirms the view that the purpose of all the deeds was to convey the title to the partnership, and the lots became a part of the partnership assets. The purchase price of all the lots was paid with partnership funds except the first deed, which named B. M. Magness as one of the grantees, but we think this deed was intended by B. M. Magness as a contribution by his daughter and her husband to the new co-partnership, and that it was the intention and purpose of all the conveyances to acquire title for the benefit of the partnership.

In addition to these partnership lands, L. E. Fowler bought other lands from time to time in his own name and certain lots adjacent to the partnership lots. L. E. Fowler became the dominant figure in the partnership,

and borrowed $2,500 from M. F. Franklin, first $1,500 and later an additional $1,000. Franklin testified that the money was borrowed for the firm, and Fowler testified that he did not remember for what purpose the money was borrowed; but we think it fairly inferable— and we find the fact to be—that it was borrowed for firm purposes.

On August 14, 1925, T. R. Magness sold his one-third interest in the business, including the real estate, to Pleas Fowler, and on March 22, 1929, Pleas Fowler conveyed his interest to L. E. Fowler. As the partnership thereafter continued, L. E. Fowler owned a two-thirds interest, and S. L. Fowler and Edna, his wife, owned the other third.

There were a number of transactions between L. E. Fowler and Franklin which are difficult to understand, because of the lack of candor or the failure of memory, through the lapse of time. These resulted in L. E. Fowler giving Franklin a mortgage on his undivided two-thirds interest in the partnership business, which indebtedness, after other transactions were had, was merged in a debt fixed at $6,500, which was secured by a mortgage conveying all the partnership property, though it was not described or referred to as partnership property. The date of this mortgage was October 30, 1935.

On September 29, 1939, L. E. Fowler executed to Franklin a warranty deed conveying all the lands which the partnership had acquired, and also certain lands to which Fowler had acquired title individually, including his home. The recited consideration for this deed was the satisfaction of all demands due Franklin and the execution of a lease from Franklin to Fowler upon the Fowler home and a portion of the partnership property for a term of five years.

When S. L. Fowler and his wife learned of this deed, they filed this suit to cancel the deed as a cloud upon their title, and to partition the partnership lands.

The court dismissed the complaint as being without equity, and confirmed the conveyance from Fowler to Franklin as against both S. L. Fowler and wife and L. E. Fowler, and from that decree is this appeal.

After confirming Franklin's title to the property, the costs were assessed against Franklin, and from that decree Franklin has prosecuted a cross-appeal.

The record is voluminous, the testimony is sharply conflicting, and is characterized by the uncertainty of the testimony and the failure of the parties to remember essential details of the transactions between themselves, which extended over a·period of years. Upon the whole case, we are unable to say that the chancellor's findings are contrary to the preponderance of the evidence.

The partnership business was conducted in the name of Magness & Fowler, and was at first profitable, but later not so, and S. L. Fowler accepted another position, and the business was left in the sole charge of L. E. Fowler, who continued to operate it until it was finally closed in the fall of 1938. Fowler enlarged his operations with money borrowed from Franklin, but the additional business was conducted as a part of the old. For a period of thirteen years Fowler operated the business as if he were the sole owner; indeed, he abandoned the use of the firm name and thereafter conducted the business in his individual name, and was, so far as those dealing with the firm were advised, the sole owner. Taxes on the real estate were assessed for the years 1932 and 1933 in the name of Magness & Fowler, but were paid by Fowler in his individual name. In 1934, the assessments were made in the name of L. E. Fowler, and were thereafter assessed and paid in his individual name.

S. L. Fowler and his wife, after apparently abandoning the business, must necessarily have known that L. E. Fowler was operating it in his own name as if he were the sole owner, and that credit had been or might be extended upon that basis.

The partners here had permitted the partnership business to be as loosely operated as were the affairs of the Jacks Transfer Company in the case of *Jacks* v. *Greenhaw*, 105 Ark. 615, 152 S. W. 160, and the legal principles there announced are applicable here. It was there said: "It appears that Jacks desired to start Wells, who was a brother-in-law, in the business, and that he placed him in charge of the transfer business. It

appears that thereafter for more than six years Jacks gave no attention to the business and exercised no control whatever over it, although he lived within a mile and a half of Marianna. Wells' control appears to have been absolute, and he conducted the business as if it were purely a private enterprise. The proof shows that he sold the property of the partnership at will, and bought other property when he pleased, and that he borrowed money and executed notes in the name of the Jacks Transfer Company or in his own name without even consulting with or reporting to his co-partner. It appears that among the number from whom Wells borrowed money was the plaintiff Greenhaw, and that he had an arrangement with him by which he secured $800 to be used in the wood and coal business, which Wells was conducting as a branch of his transfer business. . . . It must be conceded that Wells was operating without due regard to the rights of Jacks, but those questions may be settled in a suit for accounting between themselves. After executing the deed of trust and after taking over such assets as Greenhaw and Wells owned at that time, Wells continued to operate the business until some time after the maturity of this note. The question here is, whose debt was evidenced by this note? And we conclude that the chancellor was warranted in finding that the debt which the note evidenced was that of Jacks Transfer Company, and the plaintiff has the right to have his deed of trust foreclosed. The power of one partner to bind firm property by a chattel mortgage given to secure a firm debt, without the consent of the copartner, is generally recognized. 30 Cyc. 497; *Gates* v. *Bennett,* 33 Ark. 475.''

So, here, S. L. Fowler and his wife, for a long period of years, permitted L. E. Fowler to operate the business as if he were the sole owner, and we think it would now be inequitable to permit S. L. Fowler or his wife to say that L. E. Fowler did not possess the authority which they for a long period of years permitted him to exercise. As in the Jacks' case, so here, there may be a question of accounting between the Fowlers; but that question is not now presented.

In any view, for a long period of years, L. E. Fowler was permitted to conduct the partnership business as if it were his own, and to incur obligations in the conduct of the business.

It was said in the case of *Bonner* v. *Coburn*, 163 Ark. 274, 260 S. W. 28, that it was the settled doctrine in this state that the real estate of a partnership is, in equity, considered as personal property insofar as it may be necessary for payment of the partnership debts; and in *Welch* v. *McKenzie*, 66 Ark. 251, 50 S. W. 505, it was said that, in equity, real estate purchased with partnership funds for the use of the partnership is chargeable with the debts of the partnership. It was also held in the case of *First National Bank* v. *Bedingfield*, 83 Ark. 109, 102 S. W. 683, that it was within the power of one member of a partnership, acting in good faith, to make a chattel mortgage of all the partnership property to secure partnership indebtedness.

We conclude, therefore, that the court was correct in confirming the title to the partnership lots in Franklin. If L. E. Fowler did not, in fact, have the actual authority to execute the deed, we think it would be inequitable to permit S. L. Fowler and his wife, at this time, to raise that question.

In view of what must have been the finding of the court below, as evidenced by the decree which was rendered, we think it was error to impose the costs of the suit upon Franklin, and that portion of the decree will be modified by assessing the costs against the plaintiffs, S. L. Fowler and wife, and, as thus modified, the decree will be affirmed.