Joe HELLER, Plaintiff,

v.

Elie G. MATTAR, Defendant.

Civ. A. No. 633.

United States District Court
W. D. Arkansas, Hot Springs Division.

Nov. 28, 1955.

D. D. Panich, Little Rock, Ark., for plaintiff.

Leland Leatherman, Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

#### Statement

On November 3, 1955, this case was tried to the Court, without a jury, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs from the respective parties.

The briefs have been received, and now the Court, having considered the ore tenus testimony of the witnesses, stipulations, pleadings, exhibits and briefs of the parties, makes and files herein its findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1.

Plaintiff is a citizen of California, residing in the City of Los Angeles. Defendant is a citizen of Arkansas, residing in Hot Springs, Arkansas. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

### 2.

In 1947 the defendant, Elie G. Mattar, hereinafter sometimes referred to as Mattar, and Harry A. Davis, hereinafter called Davis, formed a partnership in the City of Hot Springs, Arkansas, which partnership operated under the name of Mattar's Art Galleries. The partnership operated an "Auction House" and among other items sold diamonds and jewelry.

Prior to the formation of the partnership, Davis at one time had worked in Los Angeles, California, and had become acquainted with the plaintiff, Joe Heller, who operated a wholesale diamond and jewelry business. After the partnership was formed Davis made a trip to Los Angeles and made arrangements with Heller for the purchase of merchandise from Heller by the partnership. Before shipping any merchandise to the partnership, Heller made inquiries concerning the financial status of Mattar, and was told that it was excellent. Heller was of the opinion that Davis was a very good auctioneer, and therefore he decided to do business with the partnership.

Some time after the partnership was formed, the partners, Davis and Mattar, opened another place of business in Blowing Rock, North Carolina. From May until the middle of September, 1950, Mattar spent practically all of his time in Blowing Rock, and Davis was actively in charge and operated the business in Hot Springs.

### 3.

During the months of July and August, 1950, Davis, on behalf of the partnership, executed four notes payable to Heller, said notes being issued to cover amounts due Heller by the partnership for merchandise purchased from Heller. The first note, dated July 29, 1950, was in the sum of $2,508.95 and was due January 20, 1951. On August 31, 1950, three notes were executed, one in the sum of $1,000, payable December 20, 1950; one in the sum of $1,425.87, payable February 20, 1951; and one in the sum of $1,425.87, payable March 20, 1951. These are the four notes sued upon in the instant case.

### 4.

On September 20, 1950, upon the return of Mattar from Blowing Rock to Hot Springs, Davis and Mattar dissolved the partnership. Under the terms of the dissolution Mattar acquired the business in Blowing Rock, which was a corporation, and Davis acquired the business in Hot Springs. Davis and defendant agreed that Davis would own all the assets and assume all the liabilities of the Hot Springs business, which had been operated by the partners under the name of Mattar's Art Galleries. It was also agreed that Davis would not use the name "Mattar" in the business.

Within a few days after the dissolution Mrs. Catharine Mattar, who had been the secretary and bookkeeper of the partnership and who remained as Davis' employee, notified all creditors of the partnership by mail that the partnership had been dissolved and that Davis had assumed all liabilities of the partnership. Also, shortly after the dissolution Davis talked to Heller by long distance telephone and informed him of the dissolution of the partnership and of the fact that he, Davis, had assumed all the liabilities. Davis also told Heller that he was moving to a larger building and would need additional merchandise.

After the dissolution Davis operated the business in his own name and defendant had no further connection therewith. Subsequent to the dissolution Davis' financial condition became progressively worse, and he was unable to meet various notes as they became due.

With particular reference to the four notes sued upon herein, the $1,000 note due December 20, 1950, was not paid on the date due, but on December 14, 1950, a new note in the same sum was executed to be due February 20, 1951. The $2,508.98 note, which was due January 20, 1951, was not paid on the date due. On the same date, two other notes (not directly involved in this action) in the respective sums of $1,000 and $1,425.86 became due. The latter note was paid, but three new notes of $1,193.15, to become due March 20, 1951, April 20, 1951, and May 20, 1951, were executed in place of the $2,508.95 note (which is one sued upon) and the $1,000 note (which is not one sued upon).

On January 19, 1951, apparently after receiving the new notes above referred to, Heller wrote Davis as follows:

"Dear Harry:

"I received your notes in place of those you extended. I was very much surprised that you didn't include the check for the 30th, as you promised when I spoke to you on the phone.

"You must realize that I need some money, due to the fact that you usually extend about half of what is due, but now you extended about three-quarters, and it put me short, as I figured you would extend only half, same as usual.

"You promised me faithfully that you would take care of the balance of the memorandum with a check for the 30th of this month. I haven't received it.

"Enclosed is a bill. For the memo goods. Please make out a check immediately and send same to me.

"Thanking you for your cooperation, I remain

"Sincerely yours,
"(Signed) Joe Heller"

On February 5, 1951, Davis executed a check in the sum of $870, payable to Heller, with a notation on the check "open account in full to date". Sub-sequently this check was presented for payment by Heller and was returned marked "Insufficient Funds".

In the latter part of February, 1951, the remaining two notes sued upon (each in the sum of $1,425.86, one payable February 20, 1951, and one payable March 20, 1951), together with the four new notes that had been executed (three in the sum of $1,193.15 each, and one in the sum of $1,000), made a total indebtedness due Heller in the sum of $7,431.19 (not counting the $870 check mentioned in the preceding paragraph).

It was apparent that Davis could not pay these large notes when due, and in an effort to assist Davis in paying the indebtedness Heller permitted him to execute 50 postdated checks, 49 in the sum of $150 and one in the sum of $81.19. The checks were numbered 795 to 801 and 803 to 845 and were dated at weekly intervals from March, 1951, to February 8, 1952. Practically all of the checks bore the notation "pt. pmt. of notes" or "pt. pmt. of loan". The last check, dated February 8, 1952, bore the notation "Full Pmt. of Notes Due to date". The total amount of the checks was $7,431.19, which was the amount due on the outstanding notes. The checks were given to Heller and kept in his possession.

Checks Nos. 795 to 799, inclusive, being in the total sum of $750, were paid during the period from March 10, 1951, to March 31, 1951, and said amount was credited upon the payment of the notes. Checks Nos. 800 and 801, dated April 4 and April 11, 1951, each in the sum of $150, were presented for payment by Heller but were returned marked "Insufficient Funds".

On April 11, 1951, Davis was adjudged a bankrupt, and thereafter no further payments were made to Heller by Davis. On May 17, 1951, Heller filed a proof of claim in the bankruptcy proceeding, said claim being in the sum of $7,551.19 and being based upon the unpaid checks executed by Davis payable to Heller.

In response to a request for further information about the claim, on November 8, 1951, Heller wrote his then attorney, Mr. Richard W. Hobbs of Hot Springs, as follows:

"Dear Mr. Hobbs:

"Re: Harry A. Davis

"In reply to your letter of November 5, I am sending you a duplicate copy of the invoices for 1950.

"Due to the fact that the notes had been rewritten, it has been difficult to get the figures for you. We have connected the notes and checks as follows:

$2,508.95 Note—part payment of Inv. #1753–55 inc.
$1,000.00 Note—part payment of Inv. #1801–05 inc.
$1,425.87 Note       "       "       "       "       "
$1,425.87 Note       "       "       "       "       "
$1,070.50 was re-written from other notes from Inv.
                    1753–55    inc.
                    1801–1805  inc.
                    1832–1833  inc.
$870.00 Check—paid against Inv. #1950

"As stated in our letter of May 9, 1951, everything was cleared up by Post-Dated Checks.

"I hope this information proves satisfactory.

"Sincerely,
"(Joe Heller)"

### 5.

At the time Davis first informed the plaintiff Heller of the dissolution of the partnership, the plaintiff stated that in the event Davis did not pay the indebtedness due him that he would hold Mattar responsible. However, at no time did plaintiff make any statements to the defendant Mattar concerning the matter, and plaintiff made no demand upon him for the payment of the notes as they matured. The defendant Mattar had no knowledge of the execution of the notes by his former partner Davis until the filing of the instant suit in May, 1955

### 6.

Following the adjudication of Davis as a bankrupt, the trustee in bankruptcy employed a certified public accountant to audit the books of the business that had, prior to the dissolution of the partnership, been operated as Mattar Art Galleries. The books were very incomplete but the accountant reconstructed a balance sheet from the meager records that were obtainable which showed a net worth of the assets of the partnership on September 20, 1950, the date of the dissolution, to be $3,360.59. Approximately three months later, the reconstructed balance sheet showed a loss of $43,376.22. On December 31, 1950, the loss had increased to $53,681.02. However, the Court is convinced that the books of Davis were too incomplete to establish his financial condition with any degree of certainty. See, Dinkelspiel v. Weaver, D.C.Ark., 116 F.Supp. 455.

The testimony does not disclose whether the plaintiff knew of the financial condition of the partnership at the time it was dissolved, and apparently the defendant Mattar was not fully advised of the financial condition of the business since the partnership business was operated principally by Davis.

### 7.

The plaintiff was anxious to continue business with Davis and succeeded in keeping the account for merchandise sold to Davis after the dissolution fairly current. The plaintiff realized that Davis could not pay the notes sued upon

as they matured and, without notifying the defendant that he expected to hold him liable on the notes, proceeded to extend the notes and to take other notes and finally the series of postdated checks as set forth in Finding of Fact No. 4.

## Discussion

Summons was served on the defendant on May 14, 1955. On June 2, the Court by order granted defendant thirty days additional time in which to answer or otherwise plead to the complaint. Within the extended time and on July 1, 1955, the defendant filed his answer in which he admitted that he was a partner of Harry A. Davis in the business known as Mattar's Art Galleries during the year 1950 until September 20 of that year, at which time the partnership was dissolved.

On August 12, 1955, plaintiff filed a motion for summary judgment which was denied on September 24, 1955. On the same date the defendant filed his motion for leave to serve and file an amendment to his answer in which he set forth various reasons in support of the motion. Leave to file an amendment to the answer was granted and it was filed the same date, September 24, 1955.

The amendment to the answer is a continuation of the original answer which contained four paragraphs, and the various paragraphs of the amended answer began with Paragraph No. 5 in which defendant alleged that during December, 1950, the plaintiff and Harry A. Davis arrived at an accord and satisfaction of plaintiff's claim in consideration of certain checks drawn by Harry A. Davis and delivered to plaintiff and accepted by plaintiff in full accord and satisfaction of the claim sued upon.

In Paragraph 6 defendant alleged that plaintiff had filed a claim in bankruptcy against the said Harry A. Davis for the debt sued upon and relied upon said checks that were issued by Harry A. Davis as a basis of and in support of the claim.

In Paragraph 7 the defendant alleged 1950, plaintiff and the said Harry A. Davis entered into an agreement whereby, in consideration of the delivery to plaintiff of said checks, the old debt complained of herein was extinguished and a new debt created with Harry A. Davis as sole obligor and that the agreement amounted to a novation and released the defendant.

In Paragraph 8 the defendant alleged that, upon the dissolution of the partnership of Davis and the defendant, Davis agreed to assume the existing obligations of the partnership and "plaintiff knowing of this agreement, consented to a material alteration in the nature and time of payment of such obligation, and the defendant was thereby discharged from any liability to plaintiff of such obligation".

The defendant and Harry A. Davis were partners at the time the notes were executed by Davis and the notes were executed for merchandise sold to the partnership by the plaintiff. Thus, at the time of the dissolution of the partnership, the defendant was liable on the notes sued upon. In Jacks v. Greenhaw, 105 Ark. 615–619, 152 S. W. 160, 161, the Court said:

> "'As a rule, the firm is liable on the individual negotiable paper of one or more of its members, when it is shown that such paper was intended to bind the firm, and was given and accepted for a firm indebtedness.'"

The case of Haley v. Brewer, 220 Ark. 637, 249 S.W.2d 128, was a suit by appellee upon four promissory notes and upon a claim for back salary, all owed by a partnership called Neark Enterprises. The defendant, appellant, was alleged to be a member of the firm but Haley denied that he was a partner in the business. At page 638 of 220 Ark., at page 128 of 249 S.W.2d, the Court said:

> "We conclude that there is ample evidence to support the finding that Dr. Haley was a partner, and as such he is liable for the partner-

ship debts. Ark.Stats.1947, § 65–115."

The Statute cited by the Court provides:

"All partners are liable,

"(a) Jointly and severally for everything chargeable to the partnership under sections 13 and 14 (§§ 65–113, 65–114).

"(b) Jointly for all other debts and obligations of the partnership * * *."

The defenses alleged by defendant in the amendment to the answer in paragraphs numbered 5, 6, and 7 are in effect that the defendant is not liable because of the agreement between the plaintiff and Davis by which plaintiff extinguished the debt sued upon and created a new debt with Davis as the sole obligor.

In Volume 2 of Restatement of the Law of Contracts, Section 424, page 798, novation is defined as follows:

"A novation within the meaning of the Restatement of this Subject is a contract that

"(a) discharges immediately a previous contractual duty or a duty to make compensation, and

"(b) creates a new contractual duty, and

"(c) includes as a party one who neither owed the previous duty nor was entitled to its performance."

In 39 Am.Jur., Novation, Section 4, page 256, it is said that novation may be effected in three ways:

"(1) By the substitution of a new obligation between the same parties with intent to extinguish the old obligation;

"(2) by the substitution of a new obligor in place of the old one, with intent to release the latter; and

"(3) by the substitution of a new obligee in place of the old one, with intent to transfer the rights of the latter to the former. * * *"

It should be borne in mind that Davis was liable as a member of the partnership on the note sued on as was the defendant. Whatever may have been done between Davis and the plaintiff, there was no substitution of a new obligor in the place of Davis. Neither was there a substitution of a new obligee in place of the plaintiff. The testimony does not disclose that the plaintiff intended to release the defendant from his obligation for the partnership debts. It is true that the plaintiff sought to collect the debt from Davis but the acts of the plaintiff do not establish his intent to release the defendant and to substitute a new obligation for the notes sued upon.

In Cockrill v. Johnson, 28 Ark. 193, the Court said:

"In the substitution of a new debt or obligation for an old one, which is denominated in the civil law a novation, the intention of the parties to that effect should be positively declared; or at least in whatever manner expressed it should be so evident as not to admit of a doubt; in other words, a novation is not to be presumed unless the intention to that effect evidently appears."

In Brewer & Son v. Winston, 46 Ark. 163, the Court held (headnote 3):

"A debtor will not be released by the agreement of his creditor to accept another for his debtor unless he specifically agrees to release him."

In Elkins v. Henry Vogt Machine Co., 125 Ark. 6, at page 9, 187 S.W. 663, at page 664, the Court said:

" 'Novation is the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished.' 29 Cyc. 1130.

" 'It is not essential that the assent to and acceptance of the terms

of the novation be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction and in the conduct of the parties thereafter. Such consent is not [to be] implied merely from the performance of the contract by the substitute, for that might well consist with the continued liability of the original party; the substitute acting for that purpose in the capacity of agent for the original obligor.' 29 Cyc. 1132, 1133; Logan v. Williamson, 3 Ark. [216] 220; Brewer & Son v. Winston, 46 Ark. 166. See, also, Union Cent. Life Ins. Co. v. Hoyer, 64 N.E. 435; Walker v. Wood, 170 Ill. 463, 48 N.E. 919; DeWitt v. Monjo, 46 App.Div. 533, 61 N.Y.S. 1046."

In Hanson v. Louisiana Oil Refining Corporation, 186 Ark. 331, at page 335, 53 S.W.2d 430, at page 432, the Court said:

"It is well settled that novation is the substitution by mutual consent of one debt for another, or a new debt for an old one, whereby the old debt is extinguished, and the intention to effect this must be positively declared." (Citing, Cockrill v. Johnson, supra, Brewer v. Winston, supra, and Elkins v. Henry Vogt Machine Co., supra.)

In Riddick v. White, 194 Ark. 1010, 110 S.W.2d 9, the Court reaffirmed the definition of novation approved in the above quoted cases.

In City National Bank of Huron, S. D. v. Fuller, 8 Cir., 52 F.2d 870, 79 A. L.R. 71, Judge Kenyon writing for the Court summarized the general rule as follows:

(a) The mere assumption of a debt by a third party is not sufficient to constitute novation. (b) There is no novation, unless there is an intent to relinquish the original claim and the original debtor. (c) All parties must agree to the substitution of a new debt and debtor. The creditor is under no obligation to accept a new debtor. (d) The intent of the creditor to look to the new debtor is not in itself a release of the old debtor, unless clear from all the circumstances that it was so intended, and the creditor may have a remedy against both old and new debtor.

The Arkansas cases cited above seem to be in accord with the general rule and, under the facts as found by the Court, there was no novation and the alleged defense of novation is without merit.

This leaves for consideration the defense of defendant as asserted in Paragraph No. 8 of the amendment to the answer. There the defendant alleged:

"Upon dissolution of the partnership as heretofore set out, Harry A. Davis agreed to assume the existing obligations of the dissolved partnership, and plaintiff knowing of this agreement consented to a material alteration in the nature and time of payment of such obligation and the defendant was thereby discharged from any liability to plaintiff of such obligation."

Section 65–136, Ark.Stats.1947 Anno., reads as follows:

"(1) The dissolution of the partnership does not of itself discharge the existing liability of any partner.

"(2) * * *

"(3) Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations.

"(4) * * *."

The above statute is Section 36 of the Uniform Partnership Act and, so far as the Court has been able to ascertain, has not been construed by the Supreme Court of Arkansas.

In Berry v. Sale, 184 Ark. 655, at page 657, 43 S.W.2d 225, at page 226, the Court said:

"This court has uniformly held that, in the construction and interpretation of statutes, the intention of the Legislature is to be ascertained and given effect from the language of the act if that can be done. In doing this, each section is to be read in the light of every other section, and the object and purposes of the act are to be considered. Miller v. Yell & Pope Bridge District, 175 Ark. 314, 299 S.W. 15, and Berry v. Cousart Bayou Drainage District, 181 Ark. 974, 28 S.W.2d 1060. The reason is that statutes are written to be understood by the people to whom they apply, and their words and phrases are considered and used in their plain and ordinary, as distinguished from their technical meaning, where the language is plain and unambiguous. In such cases it is said that, where the intention of the Legislature is clear from the words used, there is no room for construction and no excuse for adding to or changing the meaning of the language employed."

The Uniform Partnership Act was enacted in 1941 by the General Assembly of Arkansas and appears as Sections 65–101 to 65–143, both inclusive, of the Ark.Stats. Annotated. The Act is a codification of the law governing the organization and dissolution of partnerships as well as the rights and liabilities of the partners to each other and to those who deal with the partnership.

The obligations of the partnership were assumed by Davis, and the plaintiff, the creditor of the partnership, was fully advised of that fact immediately after the dissolution of the partnership on September 20, 1950, and the plaintiff, knowing of the agreement between the partners, consented to a material alteration in the nature as well as in the time of the payment of the obligations that the partnership owed to him. It does not seem necessary to repeat the facts as found by the Court and as set forth in Finding of Fact No. 4.

■ The intention of the General Assembly of Arkansas is clear from the words used and there is no room for construction, and this Court has no excuse for adding to or changing the meaning of the language employed by the General Assembly. The words of the statute are to be considered and given their plain and ordinary meaning and, when this is done and when the statute is applied to the facts as found by the Court, it seems clear that the plaintiff cannot recover.

In Lenger v. Hulst, 259 Mich. 640, 244 N.W. 187, 188, the Court had before it this indentical statute. The facts in that case were that Hulst and Hollemans entered into a partnership on December 1, 1928, and assumed responsibility for outstanding partnership obligations. The obligations included an indebtedness to the plaintiffs. In the course of the partnership business, two notes and various renewals thereof were given by the partners to plaintiffs as evidence of such indebtedness. On March 11, 1930, the defendant Hulst sold his interest in the partnership to Hollemans who assumed all of the partnership debts. Notice was given of such dissolution and assumption of the firm's liabilities to plaintiffs and other partnership creditors. After dissolution of the partnership, these notes were renewed each ninety-day interval until this suit was brought by plaintiffs on July 29, 1931. In the meantime Hollemans became a bankrupt, but judgment was rendered against Hulst, the sole defendant, on the theory that he was still liable on these notes as partnership obligations. The defendant Hulst appealed.

The defendant contended that after notice to the plaintiffs of the dissolution of the partnership and assumption of its obligations by Hollemans, plaintiffs on several occasions extended the time of payment of each of the notes and that

such action released him from the partnership obligations for which he might otherwise have been liable. In answer to this contention, the plaintiffs claimed that the defendant was not released by the statutory provision because, immediately upon receiving the notice of dissolution, plaintiffs wrote to both Hulst and Hollemans as follows:

> "In reply to the notice signed by Isaac Hollemans and sent to the undersigned, we wish to go on record to the effect that this company does not intend to release either of the partners * * * from the joint and several liability which they now have to pay to the undersigned company all obligations heretofore undertaken by them individually or as partners."

The trial court sustained plaintiffs' contention that, inasmuch as they notified defendant they would not release him, notwithstanding the dissolution of the partnership and the assumption of its obligations by Hollemans, defendant was thus placed in a position "to protect himself" and that he was not prejudiced by the subsequent renewals of the notes.

The Supreme Court, in disposing of the contentions, said:

> "We think it cannot be held that plaintiffs, by serving the quoted notice, could avoid the express statutory provision. Neither dissolution of the partnership nor the assumption of the partnership obligations by Hollemans released defendant from liability on partnerships debts; but he was released when, without his consent or acquiescence in any way, plaintiffs by renewals of each of these notes extended the time within which the obligations were payable and could be enforced, and in this manner materially altered the nature of each of the obligations.

> "We cannot agree with appellees' contention that the statute impaired the contract obligation of defendant to plaintiffs by changing it to one in the nature of a suretyship rather than a primary undertaking. Until plaintiffs voluntarily extended the time within which each of these notes were payable, payment could have been enforced against defendant. Plaintiffs were charged with knowledge of the law, and, if they saw fit to grant to Hollemans an extension of time within which payment could be made without obtaining defendant's consent or acquiescence in any way, they did so subject to the provisions of the quoted statute and thereby discharged the defendant from his former obligation. Farmers' & Mechanics' Bank v. Kercheval, 2 Mich. 505; General Tire & Rubber Co. v. Noble, 222 Mich. 545, 193 N.W. 229; C. J. Litscher Electric Co. v. Stiles, 247 Mich. 365, 225 N.W. 512; Wolverine Cigar Co. v. Knoppow, 253 Mich. 343, 235 N.W. 177.

> "The trial judge, who heard this case without a jury, erroneously entered judgment for plaintiff. The judgment is reversed, and the case remanded to the circuit court with direction to enter judgment for defendant."

### Conclusions of Law

**1.**

The Court has jurisdiction of the parties to and the subject matter of this action.

**2.**

The defendant, Mattar, was discharged from any liability to the plaintiff who, knowing of the agreement between the partners, consented to a material alteration in the nature of and the time of payment of the partnership obligations, and, therefore plaintiff is not entitled to recover anything from the defendant.

**3.**

Judgment dismissing the complaint of plaintiff and discharging defendant from liability thereon should be entered.