BUCKNER *v.* PRAIRIE COUNTY BANK.

5-2715                                    359 S. W. 2d 443

Opinion delivered June 4, 1962.

[Rehearing denied September 10, 1962.]

*Chas. A. Walls, Jr.,* for appellant.

*John D. Thweatt* and *Moses, McClellan, Arnold, Owen & McDermott,* by *Wayne W. Owen,* for appellee.

JIM JOHNSON, Associate Justice. This appeal involves two cases. Actions were brought by the Prairie County Bank upon two separate notes in the Circuit Court of Prairie County. Both actions were transferred to Chancery Court where they were tried as one.

In the first case, appellee, Prairie County Bank, filed suit on the 15th day of September, 1959, against Conley E. House to recover upon a note. The note, dated December 28, 1957, was in the sum of $4,000.00. House, in his answer, alleged by cross-complaint that he was not the real party in interest and that the note was a means used by BucTon Construction Company, a partnership composed of Charles Buckner and Jerry J. Screeton, to pay obligations of the partnership. That he was not the real party and that Jerry J. Screeton and Charles Buckner, the partnership, was the real party to the note and that the note should be reformed to show them as the makers. Jerry J. Screeton, in answering the cross-complaint, denied that it was a partnership debt and alleged that it was a debt incurred by Buckner and that the loan was to Charles Buckner and not to the partnership. Charles Buckner, in his pleading, admitted that the money was borrowed by House for the use and benefit of the partnership, BucTon Construction Company, and alleged that Jerry J. Screeton assumed this liability along with all other obligations of BucTon Construction Company when he purchased Buckner's interest in the partnership.

In the second case, appellee, Prairie County Bank, filed suit against Charles S. Buckner and Margaret Ann Buckner on the 24th day of March, 1960, upon a note alleged to be due in the amount of $20,000.00. This note was dated the 16th day of December, 1958. The Buckners answered admitting signing the note but denied signing the note as individuals, contending in effect and *inter alia* that the $20,000.00 loan was an accommodation loan for the sole benefit of the true obligor, BucTon Construction Company.

The Buckners filed a cross-complaint with their answer, in which they set out that this was an obligation which had been assumed by Jerry J. Screeton when the partnership was dissolved.

The issues involved in the *Prairie County Bank* v. *House* part of the litigation were whether the note signed by House constituted a debt of House or a debt of BucTon Construction Company, with the further issue being if the debt were a partnership debt, then had Jerry J. Screeton assumed this obligation upon the dissolution of the partnership. Another issue raised was one involving a deed given by Buckner to House to hold as security in the event that BucTon Construction Company became insolvent.

The issue in the Prairie County Bank v. Buckner part of the litigation was whether the obligation was one of the partnership or was an obligation for a capital investment in the patnerrship.

After hearing the evidence, the Court found that House was obligated to pay the note to the Prairie County Bank but that the $4,000.00 borrowed was loaned to BucTon Construction Company, a partnership at that time composed of Charles S. Buckner and Jerry J. Screeton. The Court further found that Charles S. Buckner and his wife gave to Conley E. House their deed to secure the payment of this obligation and found further that Jerry J. Screeton was primarily liable to the Bank, but that the lands conveyed by the Buckners to House were to be conveyed by House to Screeton and further found that Charles S. Buckner and Margaret Ann Buckner were liable to the Bank on their promissory note in the sum of $20,000.00, and dismissed the cross-complaint of Charles S. Buckner and Margaret Ann Buckner against Jerry J. Screeton, from which judgment Charles S. Buckner and Margaret Ann Buckner have appealed.

The partnership dissolution agreement was pre-prepared by Jerry J. Screeton and is as follows:

"KNOW ALL MEN BY THESE PRESENTS:

That we, Charles S. Buckner and Margaret Ann Buckner, his wife for and in consideration of the agreement of Jerry J. Screeton to hold us and each of us harmless from all indebtedness of BucTon Construction Company, and East Arkansas Materials Company, and for the further consideration of the sum of One Dollar, cash in hand paid to us by Jerry J. Screeton, receipt of which is hereby acknowledged, do hereby assign, sell, transfer and convey unto the said Jerry J. Screeton all of the right, title, claim and interest we have, or either of us has, in BucTon Construction Company and East Arkansas Materials Company and in all of the assets of said BucTon Construction Company and East Arkansas Materials Company, and I, Charles S. Buckner retire from said BucTon Construction Company and East Arkansas Materials Company.

WITNESS OUR HANDS AND SEALS This *26th* day of *March, 1959.*"

The facts in regard to the House loan as developed at the trial are basically not in dispute. House, a Lion Oil Distributor in Hazen, was servicing an account with BucTon Construction Company. BucTon owed Lion Oil Company about $4,000.00 and Lion Oil was threatening to cancel their credit. This was a large account and Mr. House did not desire to have it cancelled. He went to Mr. Buckner, who was then a partner in BucTon Construction Company, and explained the situation to him. Mr. Buckner then made arrangements with Prairie County Bank for a loan for Mr. House, who was in turn advised to go to the bank and sign a note for $4,000.00. The understanding being that BucTon would make the interest payments and would pay the principal sum when it was due. Mr. Hartlieb, Vice-President of the bank, prepared the note and Mr. House signed it. The money was deposited in House Oil Distributor account and then

Mr. House made a check to BucTon Construction Company for $4,000.00 and marked the check loan. Upon receipt of this loan from Mr. House, BucTon Construction Company immediately used the money to pay its debt to Lion Oil Company.

It is clear from the record that Mr. Buckner in arranging this transaction was acting for the partnership under the authority of Section 65-109, Ark. Stats. 1947.

Some 21 months following this transaction Mr. House, in the course of his business as distributor for Lion Oil Company, was called upon by his company to furnish them a financial statement. Mr. House advised Mr. Buckner of his fears that this $4,000.00 indebtedness would adversely affect his financial statement and requested that the note to the bank be paid. It appears that BucTon Construction Company was still suffering financial difficulties and rather than have the partnership at that time attempt to pay the debt, Charles Buckner and his wife, On October 31, 1958, executed to Conley House their deed to a 200 foot lot which they individually owned. The lot is located in Hurt's Addition to the Town of Hazen. The deed was given for the purpose of offsetting the note on House's financial statement and for him to hold in the event that BucTon Construction Company became insolvent. The deed was not to be recorded and had not at the time of trial been recorded.

On the 26th day of March, 1959, the agreement set forth above was entered into between the Buckners and Screeton in which, as stated therein, the Buckners transferred to Screeton all their interest in BucTon Construction Company for the consideration of Screeton holding them harmless from all indebtedness of the partnership.

The original note was executed on January 21, 1957. BucTon paid the interest on this note on June 3, 1957, and September 13, 1957. Then on December 28, 1957, at the request of Mr. Hartlieb, Mr. House executed the note that is in question to this litigation. The purpose of this note was to renew the old note of January 21, 1957.

The interest was paid on this note by BucTon on July 30, 1958, December 1, 1958, and on April 1, 1959. The last payment being made after Mr. Screeton had purchased all of Buckner's interest in the partnership.

From these and other facts disclosed in the record, the trial court properly found the $4,000.00 to be a partnership indebtedness. *Jacks* v. *Greenhaw,* 105 Ark. 615, 152 S. W. 160. This being true, the learned chancellor further properly found that the indebtedness was assumed by Screeton under the terms of the partnership dissolution agreement. However, on trial *de novo* we cannot, from the record, agree that the equitable title to the land deeded by the Buckners to House was ever in BucTon, nor that this land should be deeded to Screeton (the now sole owner of BucTon) upon his payment of the $4,000.00 partnership indebtedness. As we view the matter, the land belonged to Buckner personally. Buckner paid the taxes and had possession of the land. Nowhere in the record is there any evidence that this land was not Buckner's individually and there is a complete absence of any evidence that BucTon ever had any interest in the land. In fact, Mr. Screeton acknowledged that this land was Mr. Buckner's individually when he testified that he had tried to buy the land from Mr. Buckner prior to the dissolution of the partnership.

The state of the record being thus, we are, on this phase of the case, impelled to the conclusion that the proof was clear, decisive and convincing that the deed from Buckner to House was, in fact, an equitable mortgage with the equitable title remaining in Buckner. *Watkins* v. *Demby,* 192 Ark. 1178, 91 S. W. 2d 251. When Screeton pays the Prairie County Bank the judgment on the $4,000.00 note, as he is obligated to do, then House will convey the lot to the Buckners, as owners.

The facts as developed at the trial relative to the Buckner loan were not nearly so involved as those pertaining to the House loan.

The $20,000.00 note executed by Charles S. Buckner and Margaret Ann Buckner to the Prairie County Bank

on December 16, 1958, was, according to the undisputed testimony of all persons, used by the makers to raise $20,000.00 which was placed into the assets of the BucTon Construction Company.

It appears that on December 16, 1958, the BucTon Construction Company was in need of funds in its account in the Prairie County Bank to the extent of approximately $30,000.00 to cover checks which were then in the bank and which could not be paid for lack of funds. Consequently, on that date the sum of $40,000.00 was deposited in the BucTon account.

It is undisputed that appellee Jerry J. Screeton went to the Prairie County Bank and executed a note on this date signing the note in his own personal capacity in the sum of $20,000.00 and deposited this $20,000.00 to the BucTon Construction Company account. Likewise, on the same date, the appellants Buckner went to the Prairie County Bank and executed a note in the sum of $20,000.00 which they deposited in the account of the BucTon Construction Company. It is clear from the evidence that the two notes were made each by the individual in his individual capacity and contemporaneously with the deposit in the BucTon Construction Company account in the Prairie County Bank, each of the partners was given credit in his capital investment account to the extent of $20,000.00 on the partnership books. Buckner claims that the $20,000.00 was a loan to the partnership, rather than an advancement toward capital assets. From these and other facts set forth in the record, the trial court found that the $20,000.00 loan was contributed to BucTon Construction Company as a capital asset and was not to be paid by appellee Screeton in furtherance of his partnership dissolution.

It is not only the general rule, but it is well settled in this jurisdiction, that money borrowed on the personal note of one of the partners for a contribution to, or advancement toward, his share of the capital assets of a partnership is not an obligation of the partnership. See *Garner* v. *Hallum,* 169 Ark. 295, 273 S. W. 1025; *Dixie*

*Cotton Oil Company* v. *Morris,* 79 Ark. 113, 94 S. W. 933; Vol. 40, *Am. Jur.,* § 160 p. 243.

Applying this rule to facts appearing in the record, we cannot, on trial *de novo,* say that the chancellor's findings, on this phase of the case, are against the weight of the evidence.

It follows, therefore, on the whole case before us, the decree is reversed only to the extent indicated and the cause is remanded for further proceedings consistent with this opinion.